Schafer, by guardian ad litem, vs. Luke.

---

SCHAFER, by guardian ad litem, vs. LUKE.

*March 24 — April 19, 1881.*

PROCEEDING FOR SALE OF MINOR'S PROPERTY. *(1) Jurisdiction. (2) Presumption as to proof of necessity of sale. (3) When sale should not be vacated.*

1. S., a married woman who was a minor, together with her general guardian, filed in the proper circuit court their verified petition, showing, among other things, that said S. and her brother, as heirs-at-law of their deceased father, each owned an undivided half of certain land, valued at $6,000, subject to their mother's dower right; that S. had no other property, except wearing apparel; that her brother and mother occupied the whole of said land, which constituted a farm, and that the same could not well be partitioned; that her share of the rents and income was not sufficient for her maintenance; and that it was necessary that said land should be sold, "and her interest required and would be promoted by the sale thereof;" and the petition prayed for such sale. *Held*, that the facts stated in the petition were sufficient, under secs. 3503-4, R. S., to give the court jurisdiction to proceed in the manner further provided by statute for a sale of the minor's interest in said lands.

2. Sec. 3506, R. S., provides that upon the presentation of such a petition and the filing of a certain bond by the special guardian proposed to be appointed for making such sale, "the court or circuit judge may proceed *in a summary manner* to inquire into the merits of such application," etc.; and that "if, after an examination of the matter by the court or circuit judge without a reference, . . . . . it shall satisfactorily appear that a disposition of any part of the real estate of such infant is necessary and proper," etc., such court or judge shall make a final order directing the leasing, mortgaging or sale of the same, etc. *Held*, that this permits the court to satisfy itself by means of affidavits, inspection or other methods of proof, without oral examination and cross examination of witnesses; and that, where the proceedings in other respects were as prescribed by the statute, and an order of sale was in fact made by the court without any reference of the question, it must be *presumed* that the court was satisfied by a summary inquiry as to the merits of the application.

3. The sale and conveyance having been made in full compliance with the statute, and a portion of the moneys having been paid by the purchaser, and the remainder secured in a manner approved by the court, and he having entered upon the lands, and sold and conveyed a part of them, and no injury to the minor being shown, it was error for the court afterwards, upon the records and proceedings in the matter, and on motion of a guardian *ad litem* for S., appointed for that purpose, to set aside its order for confirmation and the conveyance made in pursuance thereof.

APPEAL from the Circuit Court for *Waukesha* County.

On March 15, 1880, *Catharina C. Schafer*, who was twenty years of age on the 6th of April following, and was the wife of John Schafer, Jr., and the daughter and heir-at-law of Henry Luke, Sr., deceased, together with John G. Gradler, her general guardian, made and filed in the circuit court for Waukesha county their verified petition, alleging, among other things, the facts above stated; also, that, as such heir-at-law, said *Catharina* was entitled to, and owned in fee, an equal undivided one-half of certain described lands in said county, valued at $6,000, and that her brother, *Henry Luke*, the appellant, owned the other undivided one-half thereof, subject to their mother's right of dower; also, that *Catharina* had no other property, except wearing apparel; that her brother and mother occupied the whole of the lands, which constituted an

Schafer, by guardian ad litem, vs. Luke.

entire farm, and that the same could not well be partitioned; that her share of the rents and income was not sufficient for her maintenance; and that it was necessary that said lands should be sold, and that her interest required, and would be substantially promoted by, the sale thereof; and the petition asked an order for such sale, and that Conrad Conrad, a suitable and disinterested person, be appointed a special guardian of said *Catharina* for the purpose of selling her interests, right and title in and to the land, and proposed two sureties named, to join Conrad in a bond, in such penalty and upon such conditions as should be required. Thereupon Conrad signed and filed in said court his consent, in writing, to act as such special guardian; and an affidavit of one Mitwede was also filed therein, stating that he was well acquainted with the situation and value of the property, and that *Catharina's* interest was not worth to exceed $3,000. On March 15, 1880, at a regular term of said court, an order reciting the facts stated was entered therein, by which Conrad was appointed such special guardian, upon his executing and filing the requisite security to *Catharina*, in the penal sum of $6,000, to be approved by the court, conditioned for his faithfully performing the trust reposed in him, and paying over, investing and accounting for all moneys he should receive, according to the orders of the court, and observing such orders as should be made, and reporting to the court the terms and conditions of the agreement made for such sale before executing any deed or conveyance therefor. On the same day the requisite bond, with the requisite sureties, who had justified, was filed and approved. On March 20, 1880, Conrad, as such special guardian, filed in said court his verified report, reciting the substance of the proceedings; that he had entered into an agreement with *Henry Luke*, subject to the approval of the court, for the sale of said *Catharina's* interest in the property to said *Luke* for $3,000, to be paid and secured as therein stated. The report was accompanied by an agree-

ment in writing, duly executed by said Conrad as such special guardian, and by *Henry Luke*, and duly witnessed and acknowledged. On March 23, 1880, said court, at a regular term thereof, entered an order reciting the facts stated, and confirming said report and the agreement therein mentioned; and it was further ordered that said special guardian execute, acknowledge and deliver to *Henry Luke* a good and sufficient conveyance of the interest of said *Catharina* in said lands, upon his complying with the agreement upon his part; that he pay to the attorney therein the costs of the proceedings, and invest the residue on note and mortgage for the benefit of *Catharina*, and return on oath his doings thereon. Thereupon, and on the same day, Conrad, as such special guardian, under his hand and seal, executed and acknowledged such deed, duly attested, and the said *Henry Luke*, at the same time, complied with the terms and conditions of said agreement on his part. On the 21st of June following, the court, upon the records and proceedings in the matter, and on motion of a guardian *ad litem* appointed for said *Catharina* for that purpose, ordered that said special guardian, Conrad, and *Henry Luke*, appear and show cause, July 7, 1880, why the order of March 22d should not be vacated, and why any and all conveyances made by Conrad in pursuance thereof should not be set aside for the reason that the sale and agreement of sale so reported were wholly unauthorized, and null and void, and why all proceedings therein should not be dismissed for the reason that it appeared on the face of the proceedings that no such sale was necessary or proper; and that a copy of such order should be served upon Conrad, and also upon *Henry Luke*, ten days before the hearing, which was done. Upon the hearing of the motion, Conrad presented to and filed in the court his affidavit, stating the execution and delivery of the deed by him, as special guardian, in good faith, pursuant to the order of the court, as appeared by the records; and *Henry Luke* presented to and filed in the court his affidavit, stating

the execution and delivery of the deed, his entering thereunder into possession of the lands described, and his continuance in such possession except as to a part of the land since sold, and that he had paid the consideration mentioned, and had purchased the lands in good faith. Thereupon, on the same day, the court made an order setting aside the order of confirmation of March 23d and all conveyances made pursuant thereto. From such vacating order *Henry Luke* appealed.

*D. H. Sumner*, for the appellant.

For the respondent there was a brief by *Jenkins, Elliott & Winkler*, and oral argument by *Mr. Winkler*.

CASSODAY, J. It is urged that the petition did not state facts sufficient to bring the case within the provisions of section 3503, R. S., and hence that the circuit court had no jurisdiction in the premises. That section, among other things, provides that "any real estate, or interest therein, belonging to an infant, . . . may be sold, mortgaged or leased: . . . (1) When the personal property and the income of the real estate of such infant . . . are together insufficient for the payment of his debts, or for the maintenance and education of himself and family; (2) when the interest of such infant . . . will be substantially promoted by such disposition, on account of such real estate or interest therein being exposed to waste or dilapidation, or being unproductive, or for other peculiar reasons or circumstances." We are of the opinion that the facts stated in the petition did bring the case within the provisions. It is true, it does not show that the premises were exposed to waste or dilapidation, or were unproductive, or that the infant was indebted; but it is stated that the property consisted of an entire farm, in the possession of *Catharina's* mother and brother, and that she had no other property, and that her share of the rents and income was not sufficient for her maintenance, and that it was necessary to sell the lands, and that her interest required and would be sub-

stantially promoted by the sale thereof. This, we think, was sufficient to give jurisdiction, and we cannot hold that the mere fact of her marriage furnished a conclusive presumption that the facts stated were untrue. The application seems to have been made to the proper court " by petition of the general guardian of the infant," in which such infant joined, she being more than fourteen years of age; and such petition was duly verified. This was in compliance with the statute (section 3504, R. S.). The circuit court, having thus acquired jurisdiction, properly appointed a special guardian in relation to the proceedings on such application, who gave the requisite bond, for any breach of which he became liable to the party injured, without any direction therefor. Sec. 3505, R. S.

Section 3506, R. S., provides that, " upon the presentation of such petition and the filing of such bond, the court . . . may proceed in a summary manner to inquire into the merits of such application, or may make an order referring it to some suitable person as referee to inquire into and report," etc. Section 3507, R. S., provides that, " if, after an examination of the matter by the court or circuit judge without a reference, . . . it shall satisfactorily appear that a disposition of any part of the real estate of such infant, . . . or any interest therein, is necessary and proper, for any of the causes mentioned, . . . the court or circuit judge shall make a final order directing the leasing, mortgaging or sale of such real estate or interest therein, . . . in such manner and with such restrictions as shall be deemed expedient." It is urged upon the one hand, that no such examination was ever had, and, upon the other, that for the purposes of this appeal it must be conclusively presumed that it was had. It will be noticed that the court or judge " may proceed in a *summary* manner to inquire into the merits;" and if, from such examination, it " satisfactorily appears that a disposition . . . is necessary and proper, for any of the causes mentioned," then the sale shall be ordered. What are

we to understand by proceeding to inquire in a summary man-
ner? Certainly not a mode of trial known to the common
law, but rather an inquiry to which the common law was a
stranger. It is an examination in which the ancient estab-
lished course of legal proceedings is disregarded. It dispenses
with oral examination and cross examination, and allows affi-
davits, inspection and other methods of proof, whereby the
court or judge may quickly and directly come to a satisfactory
conclusion. The statute simply requires that, in case "it shall
satisfactorily appear" to the court or judge that a disposition is
necessary, then the court or judge shall make a final order
directing the sale, etc. The court, having appointed the guar-
dian upon his executing and filing the requisite security, to
be approved by the judge or clerk, must be presumed to have
become satisfied of the necessity of the disposition by a sum-
mary inquiry into the merits of the application. The same
order required the special guardian, before executing any deed
or conveyance, to report the terms and conditions of the agree-
ment made by him for the sale of such premises, which was
in compliance with section 3508, R. S.

The bond having been given and approved, as required, and
the agreement of sale having been reported to the court, as
directed, the same was thereupon confirmed, and by the order
of confirmation the special guardian was required to execute,
acknowledge and deliver to the said *Henry Luke* a good and
sufficient conveyance, upon the terms named, in accordance
with section 3508, R. S. In pursuance of such directions,
the special guardian did execute, acknowledge and deliver to
*Luke* his deed of the property, and received from him, as ad-
mitted upon the argument, $1,500 in money, and securities
for the balance. Upon the facts in this case it is difficult to
understand upon what theory the general and special guardians
were, without any cause shown, each in effect superseded, and
their action under the direction and sanction of the court set
aside, on motion of a stranger to the record, appointed guar-

dian *ad litem* for the purpose. It is true, it was on application of the infant. But it is also true that she joined with the general guardian for the appointment of the special guardian. Can it be that the petition signed by both, containing the facts stated, did not give the court jurisdiction to proceed at all, and yet that a petition signed by her alone, without stating any fact tending to impeach the good faith of the special guardian, or anything more than mere conclusions and advice of counsel, were sufficient to authorize the court to undo what it had already done?

In *Beaufort v. Berty*, 1 P. Wms., 705, Lord Chancellor HARDWICK said: " If any wrong steps had been taken which might not deserve punishment, yet if they were such as induced the least suspicion of the infant's being likely to suffer by the conduct of the guardians, or if the guardians chose to make use of methods that might turn to the prejudice of the infant, the court would interpose and order the contrary; and that this was grounded upon the general power and jurisdiction which it had over all trusts, and a guardianship was most plainly a trust."

*In re Swifts, Minors*, 2 Molloy's R., 330, Lord Chancellor MANNERS said: " It is not the rule of the court to remove a testamentary guardian for misconduct, on petition. There must be a bill filed; but if the guardian consents, when there is no charge against him, it may be done on petition." *In re M'Cullochs, Minors*, 6 Irish Eq. R., Lord Chancellor SUGDEN, after reviewing the authorities, held that " minors may be made wards of court on petition, without changing the guardians, where there are testamentary guardians, and although no bill has been filed, nor any misconduct imputed to the testamentary guardians." So, in the *People v. Byron*, 3 Johns. Cases, 53, it was held that " a guardian appointed by the court of chancery has a vested interest in the estate of his ward; he may bring actions relative thereto, and make avowry in his own name, and may also make leases during the minority of

the infant; he has in all respects the dominion *pro tempore* of the infant's estate." But here the application is not to make the minor the ward of the court, nor to remove the special or general guardian for misconduct, but to appoint a guardian *ad litem*, for the purpose of setting aside the order of the court and the action of the special guardian thereunder, for the reason that the court had proceeded under a misapprehension of the law. Accordingly it was " ordered that the order of confirmation in this matter, dated the 23d day of March, 1880, and all conveyances made pursuant thereto, be and the same are hereby set aside."

This order left the purchaser unprotected. He had parted with $1,500 in cash, and an equal amount in securities, upon the faith of the orders of the court and the powers of the special guardian thereunder. He had also made a contract and conveyance on the strength of them. No injury could result to the infant, as she had the special guardian's bond, and he held what appears to have been the value of the land in funds and securities as her trustee. The case suggests the language of PAINE, J., in *Re Haney*, 14 Wis., 423, where he said: " If such is the true nature of the proceeding, there would seem to be an incongruity in allowing an infant to come into court by his guardian and ask to have certain proceedings taken in his behalf, and then come into an appellate court, either by himself after he came of age, or by some other guardian or next friend before he came of age, and ask to have those proceedings reversed for error." Here the anomaly is still more striking, as the infant seeks, through a guardian *ad litem*, to set aside the action taken by the court and special guardian on the request of herself and general guardian, by proceedings in the same court. Judge PAINE there cites *Peters v. Peters*, 8 Cush., 529, in which it was held, per SHAW, C. J., that " a writ of *certiorari* will not be issued on the application of a minor whose guardian *ad litem*, duly appointed for the occasion, assented to the proceedings sought to be quashed."

We may here well repeat what Judge Paine said in the case referred to, that "if both guardians and the court itself could not so represent the infant, in proceedings taken entirely in his own behalf, as to bind him, it is difficult to see how an infant can ever be so represente1 as to be bound." Where the estate of the infant is endangered or wasted, or the rights of parties jeopardized, a court of equity undoubtedly has jurisdiction, in apt proceedings or action had, to protect such estate and the rights of all as far as possible. But, without pursuing the subject, we are of the opinion that the infant, by herself and general guardian, submitted herself and her estate to the jurisdiction of the court, and became bound by the action taken. *Allmon v. Taylor*, 13 Ch. Leg. News, 250.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.