CLEAR VIEW ESTATES, INC., Respondent, v. VEITCH and another, Appellants.

*No. 366.   Argued March 3, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 84.)

For the appellants there was a brief by *Phillips, Richards & Mayew* of Kenosha, and oral argument by *Charles Richards*.

For the respondent there was a brief by *Schwartz, Schwartz & Roberts* of Racine, and oral argument by *Thomas P. Tofte* of Milwaukee.

CONNOR T. HANSEN, J. The defendants were owners of 158 acres of land in Walworth county. On June 12, 1959, the defendants entered into an agreement with Clear View which gave it an option to purchase the property at an agreed price per acre.

This agreement contained the following relevant provision:

"8. It Is Mutually Understood And Agreed, that unless the Purchaser shall pay for at least two (2) acres of land during the first year of construction, three (3) acres of land during the second year of construction, and four (4) acres of land per year thereafter, commencing with the day of the execution of this contract, then this agreement, at the option of the Seller, may be terminated by the giving of a written notice to the Purchaser."

On September 1, 1959, the option to purchase was modified by an addendum which provides in pertinent part:

"WHEREAS, the Seller presently is unable to comply with certain provisions of the Agreement entered into on the 12th day of June, 1959, more particularly paragraph

eight (8) thereof, the time within which to perform the conditions and agreements under said Agreement is extended until such time that the Mechanic's Lien dated April 8, 1959, filed by GODFREY, GODFREY AND NESHEK, Attorneys for NAIRNE W. FISHER in the Circuit Court for Walworth County, Wisconsin is removed, or is in other legal manner quashed; and thereafter, buyer shall have a reasonable time within which to comply with the terms of the Agreement entered into on the 12th day of June, 1959, such reasonable time to be determined by the building season commencing in March of the ensuing year after said Lien is removed."

It is undisputed by the parties that the Nairne W. Fisher lien referred to in the addendum was removed on January 3, 1961. The trial court found, and the parties do not dispute it on appeal, that the addendum extended the time for exercising the option for the first year, 1962, only.

It is also undisputed that regardless of the June 12th anniversary date provided in paragraph eight of the agreement, that the following are the dates and amounts of actual payments made by Clear View and accepted by the defendants with a corresponding transfer of the acres as shown:

| Year Due (June —) | Date of Payment | Acres Conveyed (approx.) | Price |
|---|---|---|---|
| 1962 | September 13, 1962 | 2 acres | $3,850 |
| 1963 | July 2, 1963 | 3 acres | 5,775 |
| 1964 | September 14, 1964 | 4 acres | 7,700 |
| 1965 | October 4, 1965 | 4 acres | 10,148 |
| 1966 | September 2, 1966 | 4 acres | 7,430 |
| 1967 | November 15, 1967 | 4 acres | 7,700 |
| 1968 | November 12, 1968 | 4 acres | 7,700 |
| 1969 | July 10, 1969 | 4 acres | 7,700 |
| 1970–71 | None | None | None |

In the years prior to 1970, it was customary for Clear View to select the acres it wished to purchase in general terms, and forward the information to the lawyer for the defendants, Rodney G. Richardson, through their own lawyer, Jay Schwartz. Richardson would then have the land surveyed, draft a deed, and procure a policy of title insurance. The two lawyers would then meet, payment would be made, and the deed executed.

In the spring of 1970, this procedure was being followed. Clear View selected four acres, all zoned for commercial use, which it wished to purchase and notified Richardson. Negotiations continued into the summer as the defendants rejected the proposed purchase of all commercially zoned lots. Richardson continued, as in the past, to negotiate directly with Schwartz. However, without notifying Clear View or Richardson, defendants retained a new lawyer, and on September 4, 1970, served Clear View with a notice of termination for its failure to purchase four acres for 1970 on or before June 12th as set forth in the 1959 option agreement.

Following the notice of termination, Clear View discontinued negotiations and made no attempt to exercise the option in 1970 or 1971. On November 20, 1970, James Scout Veitch, who attained the age of twenty-one years in April, 1970, served the plaintiff with a notice of rescission of the contract as it related to him.

*Issues.*

The following issues are dispositive of this appeal:

1. Did the trial court err in finding that Clear View had not forfeited its rights under the contract by failing to purchase four acres on or before June 12, 1970?

2. Did the Walworth county court have the power to bind a minor by contract, the performance of which would continue after the minor attained majority?

*Forfeiture of rights under option.*

The parties disagree as to the nature of the agreement in question and as to whether time was of the essence in the agreement. Defendants contend that the agreement is an option. Clear View asserts that it is not solely an option but also contains elements of a contract to sell and a contract of sale.

The agreement gives Clear View an option to purchase the land at a set price per acre for an unlimited time so long as it continues to purchase a minimum amount of acreage each year. The agreement is irrevocable except upon Clear View's failure to make the annual purchases. There is no requirement that it purchase any land unless it wants the benefit of the option to continue and no penalty is provided for a failure to purchase land except that the agreement can be terminated by the defendant.

An option to purchase when consideration is given therefor is a continuing promise by the landowner to sell real estate to another at a specified price and within a specified period of time. *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 451, 143 N. W. 2d 538; 8A Thompson, *Real Property* (1963 ed.), pp. 255–257, sec. 4443. The distinguishing feature of an option is that it does not bind the purchaser to purchase or exercise the option. 8A Thompson, *supra,* pp. 255–261, sec. 4443.

We conclude that the agreement the parties entered into was an option agreement.

The defendants contend that time is of the essence as to this agreement because it is an option. Thus, it is contended, upon Clear View's failure to purchase four acres prior to the agreement-anniversary on June 12, 1970, Clear View's rights under the agreement were forfeited and the contract could be terminated by the service of notice of termination.

On the other hand, Clear View contends, and the trial court agreed, that whether time is of the essence in a contract depends on the intention of the parties. Where, as here, the contract is silent on the question, evidence of the course of dealing between the parties is admissible to show their intention.

The option agreement in this case did not expressly provide time was of the essence. However, this court has stated that the general rule of option agreements is that time is ordinarily of the essence whether or not the agreement specifically so provides. *Conrad Milwaukee Corp. v. Wasilewski* (1966), 30 Wis. 2d 481, 485, 486, 141 N. W. 2d 240; *Megal v. Kohlhardt* (1960), 11 Wis. 2d 70, 80, 81, 103 N. W. 2d 892. This rule is generally recognized by other jurisdictions. 91 C. J. S., *Vendor & Purchaser,* pp. 859, 860, sec. 11; 55 Am. Jur., *Vendor and Purchaser,* p. 509, sec. 40. The rule asserted by Clear View, and adopted by the trial court, applies to contracts to sell, generally. *Anderson v. Nelson* (1968), 38 Wis. 2d 509, 516, 157 N. W. 2d 655; *Hoffmann v. Danielson* (1947), 251 Wis. 34, 39, 27 N. W. 2d 759.

Under the view that we take of this case, whether time is of the essence in this agreement is not controlling.

This court has held that timely performance, even if normally required, can be waived or time for performance extended, either expressly or impliedly by the optionor's acts of conduct. *See, e.g., Crolius v. Lorge* (1927), 192 Wis. 130, 212 N. W. 253; *Raddatz v. Florence Investment Co.* (1912), 147 Wis. 636, 133 N. W. 1100; *accord,* 91 C. J. S., *Vendor & Purchaser,* p. 862, sec. 12; 55 Am. Jur., *Vendor and Purchaser,* p. 510, sec. 40. Among the actions of an optionor which will constitute a waiver or an extension of the time limitation for exercise is his continuing to negotiate past the termination date. *Cf. Kubnick v. Bohne* (1972), 56 Wis. 2d 527, 202 N. W. 2d 400; *Bratt v. Peterson, supra.*

The actions of the optionor may also estop him from insisting on timely performance even though timely performance might otherwise be required. This court has stated that estoppel consists of action or nonaction on the part of one against whom the estoppel is asserted, which induces reliance by another, either in the form of action or nonaction to the detriment of the latter. *Bratt v. Peterson, supra,* page 454.

The trial court found, and we agree, that the defendants had accepted payments and made conveyances after the June 12th date over a period of years; that the parties showed by their actions that Clear View could exercise the option before the end of the building season, found by the trial court to be November of each year; that the defendants did not give sufficient, reasonable, formal notice to Clear View that it would rely upon the June 12th closing for the year 1970, to change the time of closing; and that the defendants' notice of termination, served in September, was premature and of no force and effect.

It is undisputed that the negotiations for the purchase of four acres of the land in 1970, were commenced in the spring of that year between the lawyers for the parties and continued through the summer months up until the notice of termination was served. The course of the negotiations followed that of previous years, both as to time and the fact that the lawyers conducted the direct negotiations. The defendant, Jean Veitch, admitted that Richardson contacted her before June 12, 1970, and conveyed Clear View's proposal to purchase the four commercial acres. She rejected the proposed purchases because her understanding of the agreement was that all the residential acreage would be purchased before any of the commercial acreage. Jean Veitch also testified that after June 12, 1970, in fact early in July of that year, Richardson informed her of Clear View's amended pro-

posal to purchase three residential acres and one commercial acre; this proposal was also rejected for the same reason. Following the rejection of these proposals, the defendants hired another lawyer without notifying either Clear View or Richardson. In fact, the defendants never relieved Richardson as their lawyer until after his death in October, 1970, when their file was picked up at his office. Clear View continued to negotiate with Richardson until the notice of termination was received.

While the defendants contend that the negotiations by Richardson do not bind them because he was not authorized to negotiate past the due date of the contract, we find this argument to be without merit. The relationship between lawyer and client is one of agency. *See, e.g., Plan Credit Corp. v. Swinging Singles, Inc.* (1972), 54 Wis. 2d 146, 154, 194 N. W. 2d 822; *Novak v. Delavan* (1966), 31 Wis. 2d 200, 211, 143 N. W. 2d 6; 7 C. J. S., *Attorney and Client,* p. 850, sec. 67. The defendant, Jean Veitch, testified that after the death of her husband in 1967, she told Richardson to conduct the annual negotiations, which he did until his death in 1970. She further testified that she never notified either Clear View or Richardson that she no longer wished him to act as their lawyer. Moreover, in every year since the first payment under the contract, the negotiations extended beyond the June 12th contract anniversary. This course of performance evidence is admissible to show that in prior years Richardson had the authority to negotiate past the anniversary date of the option.

Under the circumstances of this case, Richardson had authority to negotiate past the anniversary date of the contract.

The trial court correctly concluded that the defendants were bound by the negotiations of Richardson. The course of conduct between the parties over the life of the contract, plus the continued negotiations after June

12, 1970, consistent with that past course of conduct, is sufficient action by the defendants to have induced Clear View to reasonably rely on being able to exercise the option before the end of the building season. The defendants are, therefore, estopped from requiring a timely purchase of four acres in 1970.

The defendants additionally contend that since Clear View has never tendered payment, either to them or to the court, for the acres to be purchased in 1970 and in 1971, they cannot have specific performance on the agreement.

Generally, when the optionee is ready, willing and able to perform, repudiation of the agreement by the optionor waives or excuses tender. *Annot.*, 157 A. L. R. 1311, 1325, 1326. As this court stated in *Kreutzer v. Lynch* (1904), 122 Wis. 474, 478, 100 N. W. 887:

". . . it is . . . a fundamental principle governing most human affairs that conduct on the part of one justifying belief in the other that certain action on his part would be futile constitutes a waiver of such action. . . ."

The notice of termination made any further attempt by Clear View to purchase additional acreage under the option a futile gesture and was waived by the defendants.

We have considered the authorities and other arguments advanced by the defendants and do not find them to be persuasive.

*Binding effect of court-approved agreement.*

The defendant, James Scout Veitch, claims that he is not bound to the agreement, now that he has reached majority, by the order of the Walworth county court which approved the agreement while he was a minor under the guardianship of his mother.

Sec. 296.15, Stats., which has remained unchanged since the date that the agreement was approved, provides:

"**296.15 Realty of wards, validity of the conveyance.** Every deed, mortgage, lease *or other conveyance* made in good faith by the guardian of a minor . . . pursuant to any order or judgment of the county or circuit court or the presiding judge of either, made under the provisions of this chapter, shall be as valid and effectual as if made by such minor when of full age . . . ." (Emphasis supplied.)

The defendants acknowledge that previous decisions of this court have held that a guardian acting pursuant to court order can bind his ward to a conveyance of the ward's real property even beyond the time when the ward will reach majority. *See, e.g., Haas v. Welch* (1932), 207 Wis. 84, 240 N. W. 789; *Schafer by Guardian ad Litem v. Luke* (1881), 51 Wis. 669, 8 N. W. 857; *In re Haney* (1861), 14 Wis. 452 (*417). Defendants contend, however, that an option agreement is not a conveyance and thus the statute and the cases are inapplicable. The defendant relies primarily on the view that an option conveys no title, legal or equitable, to the property, and thus that it does not pass an interest in land and is not a conveyance. *See, e.g.,* 8A Thompson, *supra,* pp. 264, 265, sec. 4444.

Former sec. 235.50, Stats. 1969, defined a "conveyance" as embracing "every instrument in writing by which any estate or interest in real estate is created, aliened, mortgaged or assigned or by which the title to any real estate *may* be affected in law or *equity,* . . ." (Emphasis supplied.) Sec. 235.50 was repealed and replaced by sec. 706.01, which defines conveyance in terms of the transactions covered by ch. 706. The wording of secs. 235.50, Stats. 1969, and 706.01, is virtually identical.

The view of an option agreement, as set forth in 8A Thompson, *supra,* pp. 265, 266, sec. 4444, and espoused by

the defendant, recognizes that an option confers the right to specific performance and thus gives rise to an inchoate interest that equity will protect. Thus, even under the defendants' view of the rights created, an option agreement is a "conveyance" within the meaning of the relevant statutory provisions as it creates an interest by which the title to real estate "may" be affected in "equity."

More importantly, this court has held that an option to purchase real estate is an "interest in lands" within the meaning of secs. 240.06 and 240.08, Stats. 1969, the former statute of frauds sections governing real estate conveyances. *Bratt v. Peterson, supra,* page 452. This view is supported in the statutory definition of "grantor" under sec. 706.01 (5), which provides in relevant part:

" 'Grantor' means the person from whom an interest in lands passes by *conveyance* and includes, without limitation, . . . *optionors,* . . ." (Emphasis supplied.)

We, therefore, conclude that the trial court did not err in finding that Clear View Estates, Inc., had not forfeited its rights under the contract by not purchasing four acres on or before June 12, 1970; that the option agreement was a conveyance within the meaning of sec. 296.15, Stats.; and that the order of the Walworth county court approving the option agreement bound the defendant, James Scout Veitch, to its terms after he reached the age of majority. The trial court appropriately entered judgment for specific performance.

*By the Court.*—Judgment affirmed.