PER CURIAM.
¶ 1 Laona State Bank (the Bank) appeals a judgment dismissing its foreclosure claim against Blake and Holly Bocek. While Blake was a minor, Holly was appointed as his special guardian. The letters of special guardianship granted Holly a single power: to obtain a mortgage loan on real estate that had been transferred to Blake for the purpose of improving the property. We agree with the circuit court that the Bank has failed to demonstrate compliance with the provisions of WIS. STAT. ch. 786 (2015-16),[1] relating to the disposition of a ward's real property. Accordingly, the court properly concluded the mortgage was invalid and dismissed the foreclosure action. We affirm.
BACKGROUND
¶ 2 The relevant facts are undisputed. In 2004, when Blake was seven years old, he acquired title to real property in the Town of Crandon. In November 2005, Holly Bocek, Blake's mother, was granted letters of special guardianship that permitted her to "obtain a mortgage loan" on Blake's real estate "to allow improvements on said real estate."[2] Holly and Blake's father obtained a $51,200 loan from the Bank in December 2005.[3] The note was secured by a mortgage on Blake's property.
¶ 3 The Bank commenced this foreclosure action against Blake and Holly in 2016, based upon nonpayment of taxes and amounts due under the loan.[4] The matter was set for a bench trial, at which Blake appeared without representation. The court requested that the Bank produce a copy of the court order approving the encumbrance to Blake's property, which the Bank was unable to do. Instead, the Bank merely directed the court to the signed mortgage document, which the court found was insufficient to establish the special guardian's authority to enter into the mortgage. Rather than dismiss the case, the court granted a sixty-day adjournment and directed the Bank to be prepared for trial at that time.
¶ 4 At the adjourned trial, the Bank called two witnesses. The first was Richard Denton, who had apparently performed some chain-of-title research on the property for the Bank. The second was a loan officer, Ted Ison, through whom the Bank presented the loan and mortgage documentation. The recorded letters of special guardianship were the only proof the Bank presented at trial to establish the special guardian's authority to enter into the specific mortgage at issue here.
¶ 5 Blake testified that he did not sign any mortgage note. He was unaware of the mortgage and did not know whether Holly and his father had used the funds obtained to improve his property. Blake testified he did not know the purpose for the loan and did not know how his parents spent the loan proceeds. The letters of special guardianship had been drafted by Attorney Andrew Morgan, but Blake did not know who had paid for his legal services. Blake testified that he had lived in the same house since his birth and that no new house had been placed on the property in 2005.
¶ 6 At the conclusion of the trial, the circuit court expressed reservations about the Bank's position, including that it appeared Blake had not received any consideration for the mortgage of his property. The Bank, in turn, argued that the letters of special guardianship alone were sufficient to validate the mortgage. The court observed that this was a "unique situation" and requested that the Bank provide it with additional authority and argument for its position. The Bank supplied a short memorandum later that day.
¶ 7 At a subsequent decision hearing, the circuit court found the mortgage invalid and dismissed the Bank's foreclosure action. The court accepted the Bank's legal argument that it was under no duty to oversee that the loan funds were used for a permissible purpose. However, the court determined that the Bank had failed to demonstrate compliance with the guardianship statutes pertaining to the disposition of a ward's land, namely the requirements that a court specifically authorize the mortgage transaction and oversee the distribution of the funds for their intended purpose. The Bank now appeals.
DISCUSSION
¶ 8 The Bank presents several arguments as to why, in its view, the circuit court erred in invalidating the mortgage. Most significantly, the Bank asserts that there is ambiguity in the "interaction" between two of the provisions in WIS. STAT. ch. 786, which pertains to the disposition of a ward's land by a guardian. According to the Bank, this supposed ambiguity means both that a circuit court need not specifically authorize a transaction involving the ward's land, and that a lender may act in good faith reliance based only upon letters of guardianship. Based upon the relevant provisions of ch. 786, we find no merit to this argument.
¶ 9 Statutory interpretation presents a question of law that we review de novo. State v. Stewart , 2018 WI App 41, ¶ 18, 383 Wis. 2d 546, 916 N.W.2d 188. We give statutory language its common, ordinary and accepted meaning. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶ 46. A statute is ambiguous-thereby necessitating a broader inquiry into extrinsic sources of legislative intent-only if this analytical process shows the statute is "capable of being understood by reasonably well-informed persons in two or more senses." Id. , ¶ 47. Whether a statute is ambiguous is also a question of law. Awve v. Physicians Ins. Co. of Wis. , 181 Wis. 2d 815, 822, 512 N.W.2d 216 (Ct. App. 1994).
¶ 10 We begin with an examination of the statutes pertaining to a guardian's authority to encumber a ward's real property. A guardian may mortgage a ward's property if the ward's interests will be "substantially promoted by the disposition." WIS. STAT. § 786.06(2). The guardian must file a verified petition with the circuit court "set[ting] forth the facts which would authorize" the mortgaging of the real estate under § 786.06. WIS. STAT. § 786.07. In the case of a minor, a special guardian may be appointed and must give a bond ensuring faithful performance on the ward's behalf. WIS. STAT. § 786.08(1)(a), (1)(b).
¶ 11 After the special guardian is appointed and bonded, the presiding judge "may proceed in a summary manner to inquire into the merits of such application," or the court may order a referee to prepare a report regarding the nature of the transaction. WIS. STAT. § 786.09. In all events, "[i]f, after examination of the matter by the court or judge to which application is made, ... it shall satisfactorily appear that disposition of any part of the real estate of such minor ... is necessary and proper, for any of the causes mentioned in s. 786.06," the judge "shall make an order directing and authorizing the guardian to contract for the ... mortgaging ... of such real estate or interest therein ... in such manner and with such restrictions as shall be deemed expedient." WIS. STAT. § 786.10.
¶ 12 The statutes contemplate active judicial involvement in a guardian's conveying of an interest in a ward's property. As relevant here, a guardian is forbidden from mortgaging a ward's property unless the guardian has entered into an agreement "subject to the approval of the proper court or judge." WIS. STAT. § 786.11. "Upon the confirmation of such agreement by such court or judge the guardian must execute a ... mortgage ... as directed by the order of confirmation." Id. The court must also make an order regarding how the funds produced by the mortgage are to be applied or disposed of, and it "shall require accounts to be rendered periodically by any guardian or other person who may be entrusted with the disposition of the proceeds or the income thereof." WIS. STAT. § 786.17(1).
¶ 13 The Bank argues that ambiguity in this relatively straightforward procedure arises by virtue of WIS. STAT. § 786.15. Although the Bank's argument is not entirely clear, it appears to be asserting that even if the strictures of WIS. STAT. ch. 786 are not fully complied with, a bank may rely in good faith upon the guardian's general authority to act, as reflected in the letters of special guardianship. Thus, the Bank variously suggests that a court order confirming the mortgage is not necessary and that, even if such an order is required, the existence of such an order may be inferred in this case based on the fact that a mortgage was actually executed.
¶ 14 None of these arguments are persuasive, as they are inconsistent with the plain language of WIS. STAT. § 786.15. That statute provides, in full:
786.15 Realty of wards, validity of the conveyance. Every deed, mortgage, lease or other conveyance made in good faith by the guardian of a minor or individual adjudicated incompetent, pursuant to any order or judgment of a circuit court, made under the provisions of this chapter, shall be as valid and effectual as if made by the minor when of full age or by the individual adjudicated incompetent before the adjudication.
This statute merely binds the ward to the good faith transactions of a guardian acting pursuant to a court order. See Clear View Estates, Inc. v. Veitch , 67 Wis. 2d 372, 382, 227 N.W.2d 84 (1975). Contrary to the Bank's assertions, the statute does not "validate" the mortgage in this case.
¶ 15 First, although the Bank maintains that it relied in good faith on the special guardian's authority, WIS. STAT. § 786.15 does not speak whatsoever to a mortgagee's good faith in entering into a transaction. Rather, the statute binds a ward to any transaction entered into by the guardian in good faith (i.e., with the intention for the ward to benefit from the transaction). The statute is focused only on the guardian's ability to bind the ward; it does not concern third parties, except to the extent that it perhaps suggests a lack of good faith on the guardian's behalf may be a defense of the ward to a subsequent enforcement action by a third party.[5]
¶ 16 Second, WIS. STAT. § 786.15 binds a ward only if the transaction at issue is made "pursuant to any order or judgment of a circuit court." Although the Bank apparently contends "any order" includes letters of special guardianship, this is plainly not the case. The letters of special guardianship identify the special guardian and define the scope of his or her authority, nothing more. The letters do not authorize any specific transaction under WIS. STAT. § 786.10, nor do the letters represent a confirmation of the transaction under WIS. STAT. § 786.11.
¶ 17 Finally, WIS. STAT. § 786.15 states that the transaction binds the ward only if the deed, mortgage or lease is "made under the provisions of this chapter." The Bank never truly confronts the meaning of this clause, which plainly binds the ward only to those transactions in which the provisions of WIS. STAT. ch. 786 have been satisfied. The Bank's interpretation of § 786.15 would eviscerate the protections to the ward afforded by that chapter.[6] To safeguard the ward's interests, a transaction involving the ward's property can only be sustained if there has been compliance with the dictates of ch. 786. See Emery v. Vroman , 19 Wis. 724, [*689], 734, [*699] (1865).
¶ 18 Accordingly, it was necessary for the Bank to demonstrate in the foreclosure proceedings that there had been compliance with WIS. STAT. ch. 786. The Bank thus must demonstrate the existence of a court order approving the mortgage, an order confirming the mortgage, and an order directing the application of the mortgage proceeds. The Bank admittedly did not produce any such orders, and its assertion that such orders were unnecessary depends on its erroneous interpretation of WIS. STAT. § 786.15, which we have rejected.
¶ 19 The Bank makes only one remaining argument regarding compliance with WIS. STAT. ch. 786. The Bank contends that because letters of special guardianship were issued authorizing the guardian to enter into a mortgage, and because a mortgage was ultimately executed by the guardian, there must have existed orders authorizing and confirming the mortgage. This is essentially a challenge to the circuit court's findings of fact, which we will not overturn unless they are clearly erroneous. Tufail v. Midwest Hosp., LLC , 2013 WI 62, ¶ 23, 348 Wis. 2d 631, 833 N.W.2d 586.
¶ 20 The circuit court properly observed that the Bank's evidence was severely lacking in showing that the dictates of WIS. STAT. ch. 786 had been followed. As explained above, the letters of special guardianship-which was the only document pertaining to the guardian's authority that the Bank submitted into evidence-established only the special guardian's general authority to enter into a mortgage. The Bank believes the court should have inferred from that document and the existence of the mortgage that additional court orders authorizing and confirming the specific mortgage here must have existed. That inference, however, is illogical, circular, and fails to account for the fact that the guardian may have entered into the mortgage illegally. See Welytok v. Ziolkowski , 2008 WI App 67, ¶ 26, 312 Wis. 2d 435, 752 N.W.2d 359 ("[W]here only one reasonable inference may be drawn from the evidence, the drawing of that inference is a question of law, which we review independently."). Moreover, even if the Bank's desired inference had been reasonable, the circuit court was free to reject it and accept the opposing reasonable inference that the transaction was unauthorized. See id. , ¶ 27 ("Where ... more than one reasonable inference can be drawn from the credible evidence, we accept the reasonable inference drawn by the circuit court sitting as fact finder.").
¶ 21 The Bank presents two additional arguments, both of which we can easily dispose. First, the Bank contends the circuit court erred by imposing a fiduciary duty upon the Bank to ensure that the loan proceeds were actually used for the ward's benefit. Although certain of the court's remarks at the conclusion of the trial suggested the court believed such a duty existed, its subsequent determination, rendered following additional briefing by the Bank, rested entirely on the Bank's failure to demonstrate compliance with WIS. STAT. ch. 786. There is no merit to any assertion that reversal is warranted because the circuit court held the Bank to an improper legal standard.
¶ 22 Second, the Bank challenges several of the circuit court's evidentiary decisions. During the trial, the court refused to receive into evidence several exhibits: Exhibit 3, an unrecorded copy of the letters of special administration; Exhibits 5, 6, and 8, which were documents pertaining to a title commitment the Bank procured in connection with the mortgage; and Exhibit 15, a copy of the property tax bill. The Bank generally claims that these documents were relevant, probative evidence of the Bank's good faith and should not have been excluded.[7]
¶ 23 A circuit court does not erroneously exercise its discretion by refusing to admit irrelevant evidence. Weborg v. Jenny , 2012 WI 67, ¶¶ 62-64, 341 Wis. 2d 668, 816 N.W.2d 191. Here, because there is no good faith exception for third parties to the requirements of WIS. STAT. ch. 786, evidence of the Bank's good faith in entering into the mortgage transaction is simply not relevant. We therefore will not overturn the circuit court's exercise of discretion in excluding that evidence.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The letters of special guardianship were recorded on April 25, 2007.

The loan was twice renewed. The first renewal occurred in December 2008, in the amount of $45,381.94. The second renewal occurred in December 2014, in the amount of $25,461.35. The renewals were signed only by Holly.

Holly Bocek is not a respondent to this appeal and did not appear in proceedings before the circuit court.

It is not necessary for us to determine whether Wis. Stat. § 786.15 provides a ward with a defense to an enforcement action, nor to ascertain the scope of any such defense if it exists. Rather, it is sufficient for us to note that the statute clearly does not operate in the way the Bank suggests.

Because we conclude the plain language of Wis. Stat. § 786.15 defeats the Bank's interpretation, we have no need to resort to legislative history or extrinsic evidence pertaining to the statute's meaning.

The Bank does not explain the significance of the property tax bill. We presume it was offered to show that the property tax was in arrears, but we have no obligation (and, in fact, it would be improper) to develop an argument on the Bank's behalf. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.