OCHILTREE, Appellant, v. KAISER, Respondent.

*April 29—June 4, 1963.*

For the appellant there was a brief by *Spohn, Ross, Stevens & Pick* of Madison, and *John P. Santerre* of Barron, attorneys, and *Thomas D. Zilavy* of Madison of counsel, and oral argument by *Mr. Zilavy*.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

HALLOWS, J. This case involves two alleged contracts of sale by Mrs. Kaiser to Ochiltree of land and personal property located in Barron county, Wisconsin. One contract relates to the "Isle of Happy Days," an island in Red Cedar lake, and the other to a run-down golf course and other property on the east shore of the lake. Mrs. Kaiser owned the property, all of which excepting the island was subject to a mortgage. At the time the alleged contracts were entered into she lived in Fredericksburg, Virginia. Ochiltree, a contractor residing in Skokie, Illinois, was interested in developing the property for resort purposes, and in August of 1959 went to Fredericksburg to discuss the purchase with Mrs. Kaiser. As a result, Ochiltree drew up two documents entitled "Bill of Sale" which were signed by Mrs. Kaiser in the presence of two witnesses but not signed by Ochiltree. The first alleged contract provided for an assignment and transfer to Ochiltree in consideration

of $50,000 of all Mrs. Kaiser's title and interest to the personal property located on the Isle of Happy Days and the rights of Mrs. Kaiser in an easement across certain lands for the purpose of ingress and egress. A down payment of $6,000 was provided, plus subsequent payments of $3,000 on September 30th of 1960 and 1961 and various subsequent annual payments until the full amount was paid with six percent interest. It was also provided $500 of the down payment would be paid as earnest money and the balance upon receipt of a deed from the attorney and a trust agreement.

The second alleged contract recited a consideration of $10 paid and a purchase price of $10,000 to be paid over a period of nine years in equal annual instalments. Mrs. Kaiser transferred personal property located upon real estate, the legal description of which purported to describe various 40-acre parcels in section 11, Barron county, totaling over 400 acres of land and to include a golf course and buildings. Timber rights were reserved to Mrs. Kaiser. It was contemplated a survey of the golf course would be made and an attorney at Rice Lake would draft the documents necessary to effect the conveyance of the properties and obtain a release of the golf-course property from the mortgagee. Ochiltree gave Mrs. Kaiser a $500 check to cover the earnest money on the island contract and received the keys to the building.

The day following Ochiltree's return to Illinois, Mrs. Kaiser noticed the $500 check contained the incorrect notation of being earnest money for the purchase of both properties and sent the check to the Rice Lake attorney asking him to have it corrected. In October she received a $500 check and also a telephone call from Ochiltree who told her not to cash it. There is a dispute in the testimony whether Mrs. Kaiser was to refrain from cashing the check for a few weeks until Ochiltree completed some jobs or whether

he was not only to make the check good at that time but also pay the full $6,000 down payment. There is also dispute whether Mrs. Kaiser received the $10 earnest money on the second contract. Mrs. Kaiser never received any subsequent notification from Ochiltree to cash the check and it never was cashed.

At the time the Rice Lake attorney who was representing both parties sent Mrs. Kaiser the check he also sent the documents he had drafted pertaining to the sale of the island. In November of 1959 a survey of the golf course which was inclosed on three sides by fences and on the fourth by the lake was completed showing it consisted of 56 acres of land and showing the legal description to be different from that contained in the bill of sale. During the balance of 1959 and 1960 there was correspondence between the parties and Ochiltree went on the island and made certain improvements including some electrical work, plumbing, and painting to the building on the island, for which he had the contractors agree to forgo payment until the sale was completed. These contractors eventually filed liens, totaling in excess of $9,000. In addition, Ochiltree did some work cleaning up and renovating the golf course and cleaning up the island and in improving the beach. Plans for modernizing the property were made. The amount which Ochiltree paid for these services is not clear from the record and the extent to which Mrs. Kaiser knew of the work on the island and the golf course is disputed.

In December, 1960, Mrs. Kaiser came to Wisconsin, had the attorney write Ochiltree that if he would pay the sums due at that time she would sign the necessary papers to transfer the property, otherwise she would commence an action to quiet title and foreclose his interest as well as those of the lien claimants. She gave Ochiltree until January 10, 1961, to close the transaction. This date was extended at the request of Ochiltree to February 1, 1961.

Although Ochiltree apparently hired a lawyer in Illinois to represent him, nothing was done about the closing, and in April, 1961, Mrs. Kaiser started the action to quiet title.

The trial court found there was no meeting of the minds of the parties as to the property involved in the golf-course contract. This finding is not against the great weight and clear preponderance of the evidence. While Ochiltree was thinking in terms of a section of land, Mrs. Kaiser contemplated the sale of only the golf course providing she could obtain its release from a mortgage, which release the mortgagee refused to give. Both parties realized the legal description used was not sufficient and a survey was required. The principle that is certain which can be made certain, *Inglis v. Fohey* (1908), 136 Wis. 28, 116 N. W. 857, does not apply, because even though the legal description of the golf course as bounded by the fences and the lake was ascertained by the survey, Ochiltree claims not only that property but also the rest of section 11 which the survey does not include. The doctrine of *Inglis v. Fohey, supra,* as applied to the statute of frauds, which is not raised, is explained in *Stuesser v. Ebel* (1963), 19 Wis. (2d) 591, 120 N. W. (2d) 679. We agree with the trial court's conclusion that no contract arose in regard to the golf-course property.

However, the trial court was in error in its conclusion that no binding contract of sale existed as to the island property. We deem this to be immaterial because the trial court also concluded Ochiltree's default under the contract was such as not to entitle him to any period of redemption.

Ochiltree contends he is entitled to specific performance because he was not in default, time was not of the essence of the contract, a valid tender of performance was made prior to the commencement of the suit and he has such equities as entitle him to an equitable redemption. The contentions are put in issue by Mrs. Kaiser who successfully

claimed below that Ochiltree was substantially in default and the contract was validly disaffirmed by her and amounted to a cloud on title to the property. The evidence points to the existence of an intention of the parties to buy and sell the island property. The closing was delayed, each party blaming the other. But the greater weight of evidence supports the finding that Ochiltree was in default. The contract contained no forfeiture clause and time was not made expressly of the essence of the contract. The general rule is that time is not of the essence of a contract of sale of realty unless expressly made so or impliedly so by surrounding circumstances. However, time may be made of the essence after breach of the contract by reasonable notice to the person in default to perform. See *Long Investment Co. v. O'Donnell* (1958), 3 Wis. (2d) 291, 88 N. W. (2d) 674, and *Peyer v. Jacobs* (1957), 275 Wis. 364, 82 N. W. (2d) 202. Ochiltree was given until February 1, 1961, to perform, with notification the contract would be terminated and suit commenced. He did nothing. On the facts presented, we consider a month's time to perform after default was sufficient to make time of the essence of the contract.

We find no evidence of improvements of such nature or such hardship on the part of Ochiltree which entitles him to equitable consideration or an equity of redemption. Much of the improvement of the property consisted of creating liens thereon which were not paid for by Ochiltree and for which he is not liable since the lien claims have been dismissed as against him. Ochiltree's equities must rest upon preserving the property, cutting the grass, making some minor repairs, and in making the property more presentable for his purpose of inducing financial backers to help him to purchase the property. Ochiltree did not claim prior to the suit that he had sufficient funds to purchase the property or to complete the contract, but rather he had lost his financial backing. His main interest was in promoting

the property for sale, in whole or in part, to others. In making such improvements to the property, he was aware of the advice of the Rice Lake attorney that he was acting at some risk since the contract was not consummated. In view of the circumstances under which the alleged improvements were made, the extent thereof, and their nature, we find no error in the trial court's concluding Ochiltree had no equities.

At the time Mrs. Kaiser commenced her suit to quiet title, she had disaffirmed the contract, given notice to Ochiltree, and considered it a cloud on title. She demanded affirmative relief by her counterclaim, in addition to her defense in her answer to the suit for specific performance. This relief she is entitled to receive because Ochiltree had no equity of redemption at the time she commenced her suit or in the context of this suit at the time Ochiltree sued for specific performance. *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 195 N. W. 412.

It is contended, however, by Ochiltree that he made a valid tender of performance. The trial court correctly found against such contention. While there is an offer of performance in the pleadings, there is no tender of performance. This may not be necessary where a vendee is claiming an equity of redemption which in effect is a right to more time within which to perform, nevertheless such a tender is necessary when the vendee is suing for specific performance.

Ochiltree contends the trial court abused its discretion in denying his motion to vacate the judgment. As grounds he asserts he had two trial counsel but through a mistake each thought the other was preparing the case for trial and as a result thereof certain evidence was not properly presented and other evidence not presented at all. At the time of the trial, no request was made for an adjournment because of the unpreparedness of either counsel. After the judgment went against Ochiltree and after Judge DALEY retired, the

motion to vacate was made. While in *Paschong v. Hollenbeck* (1961), 13 Wis. (2d) 415, 108 N. W. (2d) 668, we stated an error of law of an attorney could be a basis for a trial court's using its discretion in reopening a judgment within a year of its entry, the reopening of the judgment is within the sound discretion of the court. *Padek v. Thornton* (1958), 3 Wis. (2d) 334, 88 N. W. (2d) 316. The trial court considered both attorneys for Ochiltree to be experienced in trial work, the motion should have been made sooner before Judge DALEY who tried the case and some protest or request should have been made before the commencement of the trial when the alleged mistake was discovered. We consider the trial court did not abuse its discretion in denying the motion. The granting of the motion in effect would give Ochiltree a third chance to try his case.

It is urged by Ochiltree this court should grant a new trial in the interests of justice under sec. 251.09, Stats. While we have such power, we have exercised it sparingly in the past. *Ferry v. State* (1954), 266 Wis. 508, 63 N. W. (2d) 741; *Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. (2d) 579, 69 N. W. (2d) 571; *Graff v. Roop* (1959), 7 Wis. (2d) 603, 97 N. W. (2d) 393. True, these cases were tried together but no objection was made by counsel. The complexity or the unusualness of the case is not a ground for a new trial; rather, the question is whether the defendant has had a fair trial and the material issues involved were properly tried. In our judgment, Ochiltree has had a fair trial and all the material issues properly litigated.

*By the Court.*—Judgment and order affirmed.