KUBNICK, Respondent, v. BOHNE, Appellant: BEAVER and wife, Defendants.

*No. 226. Argued October 31, 1972.—Decided December 7, 1972.* (Also reported in 202 N. W. 2d 400.)

For the appellant there was a brief and oral argument by *Edward J. Coe* of Rice Lake.

For the respondent there was a brief by *Wilcox & Wilcox* of Eau Claire and oral argument by *Francis J. Wilcox.*

ROBERT W. HANSEN, J. During the portion of the year in which the lease agreement, with an option to purchase, was executed, the gross receipts of the tavern-restaurant property involved were $12,000. The next year the gross receipts were $76,631. The following year, 1969, when respondent sought to exercise the option to purchase, the gross receipts were $96,865. These figures would appear to explain the eagerness to purchase and the reluctance to sell here evident. But we do not deal with reasons. Rather we deal with the rights of the parties under the lease agreement and the option to purchase contained therein.

The trial court's judgment did three things:

(1) It ordered defendants, Vern and Florence Beaver, to specifically perform the land contract and convey title to appellant;

(2) It ordered the appellant to specifically perform the option to purchase given respondent in the lease agreement; and

(3) It gave the respondent the opportunity to elect to purchase the property outright by payment of the full purchase price or by installment payments as provided in the option to purchase.

The trial court's disposition of the case appears to be an entirely reasonable and completely fair disposition of the controversy. But we do not deal with the equities involved. Rather we are to deal with the rights and duties of the parties under the lease-option agreement that they entered into. Appellant claims a number of legal errors are to be found in the trial and judgment.

*Settlement negotiations.* Error is claimed in the trial court's allowing in evidence discussions between the parties' attorneys, after the action was commenced, concerning closing the sale.' It is true that, viewed as offers of settlement or compromise, such discussions between counsel would be inadmissible.[1] Respondent's counsel counters that the discussions between counsel were not compromise negotiations, but an attempt to close the sale in accord with the terms of the agreement of the parties. We need not discuss nor decide that difference for the reason it is clear the evidence admitted did not establish or form the basis of the trial court's decision that there was an enforceable option agreement and that it was validly exercised. The evidence admitted was, in fact, irrelevant on these basic issues. Any error would be harmless since the evidence, if inadmissible, did not affect the substantial rights of the parties.[2]

*Statute of frauds.* Every contract for sale of an interest in land must in this state be in writing.[3] A per-

[1] *See: Gallagher v. Industrial Comm.* (1960), 9 Wis. 2d 361, 366, 101 N. W. 2d 72; *Papke v. Haerle* (1926), 189 Wis. 156, 161, 207 N. W. 261.

[2] *See:* Sec. 274.37, Stats. *See also: Jacobson v. Bryan* (1944), 244 Wis. 359, 12 N. W. 2d 789.

[3] Sec. 240.08, Stats.

son holding an option to purchase land has an interest in land, and the option contract is within the statutory requirement.[4] Such contract cannot be modified orally.[5] So appellant argues that the agreement to accept payment in full constituted a new oral and invalid agreement, replacing the written and valid agreement providing for installment payments. We do not see a willingness to accept prepayment of amounts due on an installment basis as such cancellation of the old and substitution of the new. The land contract between appellant and respondent did not provide for the privilege of prepayment in lieu of installment payments, but we do not see this as precluding appellant from accepting full prepayment if offered by the respondent. However, the point is, as we see it, not here involved. The appellant here did not agree to prepayment, but withdrew such willingness to accept prepayment and insisted upon installment payments. The appellant insisted the option to purchase be exercised according to its terms and demanded the requisite down payment. This was tendered within a reasonable time following her change of mind and demand.

*Time of tender.* The position most strenuously argued on appeal by appellant is that the tender (made five days after appellant changed her mind and refused to accept prepayment of the purchase price) was belated and not in conformity with the option to purchase provided for in the lease agreement.

From this it follows, appellant contends, that the option holder not having made the down payment contemporaneous with the exercise of the option, a condition prece-

[4] *See: Sizer v. Clark* (1903), 116 Wis. 534, 93 N. W. 539; *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 143 N. W. 2d 538.

[5] *See: Belt Line Realty Co. v. Dick* (1930), 201 Wis. 159, 163, 229 N. W. 639.

dent [6] was not met and she is released from any obligation to honor the exercise of the option to purchase. This raises an issue as to estoppel, where it was the acts of appellant, including her willingness to accept prepayment, which led respondent to offer full payment, not the down payment.[7] However, we put the issue of estoppel aside, seeing appellant's contention as an argument that the agreement, by requiring a contemporaneous down payment, made time of the essence.[8]

In a case where a purchase agreement required that the purchase price balance be paid not later than a certain date, this court dealt with the matter of time being of the essence.[9] It quoted an earlier case stating: "Time will not be regarded as of the essence of the contract merely because a definite time for performance is stated therein, without any further provision as to the effect of nonperformance at the time stated." [10] It cited another earlier case to make clear that: "The importance of time of performance depends upon the terms in the con-

---

[6] The payment of the purchase price or a part thereof can be made a requirement for exercise of an option. *Megal v. Kohlhardt* (1960), 11 Wis. 2d 70, 103 N. W. 2d 892.

[7] *See: Eberle v. Joint School Dist. No. 1* (1968), 37 Wis. 2d 651, 155 N. W. 2d 573; *McKenna v. State Highway Comm.* (1965), 28 Wis. 2d 179, 135 N. W. 2d 827. *See also:* 28 Am. Jur. 2d, *Estoppel and Waiver*, pp. 601, 602, sec. 3.

[8] In view of the fact that the lease agreement itself refers to the $6,000 payment required upon exercise of the option as a "down payment," we uphold the trial court's determination that it was such a down payment, not a condition precedent to exercise of the option. If there is any ambiguity in this regard, we affirm the trial court's finding that looking to the acts and dealings of the parties establishes their intent that it be treated as a down payment, not a condition precedent.

[9] *Long Investment Co. v. O'Donnell* (1958), 3 Wis. 2d 291, 296, 88 N. W. 2d 674.

[10] *Buntrock v. Hoffman* (1922), 178 Wis. 5, 13, 189 N. W. 572. *See also: Hoffmann v. Danielson* (1947), 251 Wis. 34, 27 N. W. 2d 759.

tract and the circumstances appearing from the acts of the parties." [11] A more recent case puts the rule or test this way: " 'The general rule is that time is not of the essence of a contract of sale of realty unless expressly made so or impliedly so by surrounding circumstances. However, time may be made of the essence after breach of the contract by reasonable notice to the person in default to perform.' " [12]

In the case before us, the option provision in the lease agreement did not state that time was of the essence or make any provision as to the effect of nonperformance at the time stated. Moreover, here the conduct of the appellant clearly establishes that she did not consider time to be of the essence. Instead, her initial statement of willingness to accept full prepayment, and subsequent ambivalence as to manner of payment gave respondent reason to believe that it was not of the essence.

After the difficulties encountered by appellant in securing title from the Beavers, she had a change of heart and refused to proceed on the full prepayment basis. After some discussions, she demanded that the sale be performed on the installment basis. She then demanded the down payment. The letter from her attorney requesting a down payment was dated January 6, 1970. On January 14, 1970, respondent and her attorney tendered the down payment. The trial court held that, under these circumstances, the option was validly exercised and the tender was made within a reasonable time. We agree.

*Judgment on prepayment.* The trial court's judgment ordered the defendants to accept prepayment and deliver title to the appellant. While the Beavers are not principal contenders in this dispute, this is clearly correct because

[11] *Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. 2d 690.
[12] *Anderson v. Nelson* (1968), 38 Wis. 2d 509, 516, 157 N. W. 2d 655, quoting *Ochiltree v. Kaiser* (1963), 20 Wis. 2d 191, 197, 121 N. W. 2d 890.

the land contract between the Beavers and appellant gave to appellant the right to prepayment without penalty. The trial court's judgment also gave to respondent the opportunity to purchase the property outright by prepaying the full purchase price rather than by the agreement specified route of down payment and installment payments. As to this order, the agreement between appellant and respondent makes no provision for such privilege of prepayment. However, this portion of the judgment is not specifically challenged, and no issue is raised as to its appropriateness on this appeal. No issue being raised, no analysis is made or conclusion reached as to the authority of the trial court to thus add the privilege of prepayment to its enforcement of the agreement between the parties.

*Maintaining tender.* Appellant sees at least a "further complication" in the fact that while the respondent tendered $8,100 on January 14, 1970, only $5,299.38 was paid into court after the commencement of this action. It is argued that, to keep a tender of money before trial good, the full amount tendered must be paid into court, at least insofar as denial of interest is concerned.[13] Where the dispute involves the amount of the payments required to be made, this is correct. However, when the party, as here, seeks to repudiate the contract or does not recognize its validity or applicability, he is deemed to have waived the tender, and it need not be maintained by payment into court.[14] Therefore, appellant cannot here complaint that an amount less than that tendered was paid into court.

*Disallowance of interest.* In her counterclaim, appellant sought rental fees, profits or some compensation for the period of time respondent had possession of the premises involved. The trial court dismissed the counter-

[13] *See: Stiles v. Dahlke* (1948), 254 Wis. 149, 35 N. W. 2d 298.
[14] *See: Weigell v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645.

claim on the merits, and we affirm that holding. The trial court also disallowed any interest to appellant after January 14, 1970, properly holding the dispute to involve repudiation of the agreement rather than a dispute as to the amount due on an admitted contract. However, the fact that respondent remained in possession of the premises, without making any payments for its use, appears to us to affect the application of the general rule as to allowance or disallowance of interest. The rule on this point is: "If the contract expressly provides for the payment of interest on the purchase money, it is the purchaser's duty, unless he is excused by the conduct of the vendor *in withholding possession* where it should have been delivered, or in repudiating the contract *and wrongfully dispossessing the purchaser,* to pay interest in accordance with the terms of the contract. . . ." (Emphasis supplied.) [15] Here the appellant did wrongfully repudiate the option-purchase agreement, but respondent was in full possession of the premises involved in the dispute. Under the rule, and in equity and fairness, the respondent should be required to pay interest at the stated rate of six percent, as specified in the agreement, on the balance due [16] from January 14, 1970, to the date on which full payment was or is made. The judgment is modified to so require and provide.

*By the Court.*—Judgment modified and, as modified, affirmed, with costs awarded to respondent.

---

[15] 92 C. J. S., *Vendor and Purchaser,* p. 128, sec. 260 (a) (1).

[16] The balance due being the difference between (1) the final purchase price (adjusted to reflect the price increase of the June 20, 1968, agreement, the balance due on the inventory and the reimbursement of real estate taxes); and (2) the down payment tendered on January 14, 1970 (adjusted to allow the rental credit).