RICCHIO, Appellant, v. OBERST and another, Respondents.

*No. 75-345. Submitted on briefs March 3, 1977.—
Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 781.)

For the appellant the cause was submitted on the brief of *Baumgartner and Anderson,* attorneys, of Kenosha, and *James F. Kracmer,* of counsel, of Silver Lake.

For the respondents the cause was submitted on the brief of *Lepp & Lepp* of Kenosha.

BEILFUSS, C. J. On May 28, 1972, the plaintiff executed an offer to purchase certain real estate owned by the defendants in Kenosha, Wisconsin. The offer to purchase specified the price of $26,000 and, among other things, provided the following as a condition of the sale:

"It is agreed that the closing shall take place on or after June 1, 1973, but not later than June 30, 1973."

The sale was not made contingent upon the plaintiff obtaining financing. The offer to purchase, drafted on the standard legal form, specified that the transaction was to be closed at a named attorney's office on or before June 30, 1973. Time was specifically made of the essence with respect to occupancy of the premises which, according to the offer to purchase, would be given to the buyer 30 days after closing. The offer to purchase provided for a $1,000 down payment with default provisions stating that if the buyer failed to carry out the agreement, all money paid would at the option of the seller be forfeited as liquidated damages and would be paid or retained by the seller.

The defendant-sellers accepted the offer to purchase apparently the same day the plaintiff submitted it; however, the real estate transaction was never consummated. Subsequently the buyer brought this specific performance action to enforce the offer to purchase agreement and require the defendants to convey the real estate to him.

In his complaint for specific performance of the written agreement, the plaintiff asserted that he has performed all of the conditions required of him by the offer to purchase and that in reliance upon the agreement, he entered into possession of a portion of the premises and expended the sum of $2,811.36 for improvements thereon (such improvements included paving of a driveway and installing a fence). The plaintiff also asserted that:

". . . the plaintiff has always been ready, willing and able and still is ready, willing and able to pay the balance of $25,000 due on said purchase price . . ."

He also alleged that he has made repeated demands on the defendants to fulfill and complete the written agreement but that the defendants have continually failed and refused to honor such agreement.

In response to this complaint, the defendants served and filed an answer and an affirmative defense specifically denying that the plaintiff has performed all the conditions required of him by the agreement and specifically alleging that the plaintiff has failed to tender the purchase price to them. In their answer, the defendants also alleged that the paving of the driveway was done against their express wishes. The defendants also denied that the plaintiff made demands on them to convey the property, and specifically alleged that there had been numerous discussions between the parties regarding the transfer of the property, but that as of December, 1974,

the plaintiff had not been able to secure the required financing.

As an affirmative defense, the defendants alleged that although the agreement called for a closing before June 30, 1973, they agreed subsequent to that date to extend the closing to the end of August, 1973; but, nevertheless at that time, the plaintiff was still unable or unwilling to produce the purchase price. They alleged that at the end of August, 1973, the agreement was held to be void because of the plaintiff's inability to secure the required financing.

The defendants also asserted that subsequent negotiations between the parties resulted in an oral agreement between them in June of 1974 concerning the purchase of the property by the plaintiff for its then current appraised value, which was $32,000. The defendants alleged that they orally agreed to convey the property to the plaintiff for the sum of $31,000, giving the plaintiff credit for the $1,000 already paid, with full payment to be made by November 1, 1974, but that closing also was never held. According to the defendants, the plaintiff told them he did not know when he would be able to obtain the purchase money and that if the defendants could, they should sell the property to someone else.

Additionally, the affirmative defense alleged that the value of the property increased from $26,000 in May of 1972 to $32,000 by December of 1974, and that the defendants, in reliance on the plaintiff's statement that he was unable to secure the required financing, accepted an offer to purchase from a third party, reflecting a purchase price of $31,000 in December of 1974.

Following the filing of the defendants' answer and affirmative defense, they moved for summary judgment. The affidavit filed by the defendants in support of their motion for summary judgment re-alleged all of the factual allegations contained in the defendants' answer and

affirmative defense. The plaintiff filed an affidavit in opposition to the motion for summary judgment. The defendants then filed two supplemental affidavits in support of their motion for summary judgment. In one of these, they alleged that on December 30, 1974, they executed a warranty deed conveying the property to a third party and that the warranty deed was then being held pursuant to an escrow agreement.

The trial court thereafter granted the defendants' motion for summary judgment, stating the following reasons:

> "In summary, the court finds the evidence shows that plaintiff never tendered the purchase price on the contract in question and as a result of this he was in breach of the written agreement upon which he now seeks specific performance. The only issues of fact center around the time he received financing and the cost of alleged improvements to the land. Neither of these are material due to the fact plaintiff failed to comply with the written agreement and as such he cannot claim he has been injustly treated thereby. Plaintiff cannot come into the court seeking equity when he has not fulfilled his end of the bargain. His remedy at law is adequate in that he may be able to recover his costs, if any, in regard to the improvements on the property."

This court has repeatedly and recently stated the methodology which should be employed by trial courts in determining whether the case before them should be disposed of by the summary judgment procedure.[1] In *Kavon Enterprises v. American Universal Insurance Company,* 74 Wis.2d 53, 245 N.W.2d 695 (1976), at pp. 56–57, this court stated:

> ". . . That 'precise methodology' has been set out in *Marshall v. Miles* (1972), 54 Wis.2d 155, 160, 161, 194

---

[1] *Federal Deposit Ins. Corp. v. First Mortg. Investors,* 76 Wis.2d 151, 250 N.W.2d 362 (1977).

N.W.2d 630, cited with approval in *Peninsular Carpets, Inc., supra,* footnote 1, as follows:

" 'Summary judgment is a drastic remedy that should not be granted where material evidentiary facts are in dispute, or, where reasonable inferences can be drawn from undisputed facts that would lead to alternative and opposite results. [Cases cited] The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. [Case cited] However, the allegations of the pleadings may not be considered as evidence or other proof on a disposition of the motion. [Cases cited] Assuming a cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. [Case cited] If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. [Case cited] The summary-judgment procedure is not a trial on affidavits. [Case cited]' "

This same methodology is used by this court in determining whether the trial court abused its discretion in either granting or denying the motion for summary judgment. *See Caraway v. Leathers,* 58 Wis.2d 321, 325, 206 N.W.2d 193 (1973).

Applying this methodology to the instant case, it is clear the plaintiff's complaint states a cause of action for specific performance of the written offer to purchase agreement executed on May 28, 1972. The complaint alleges that the plaintiff has always been ready, willing and able and is still ready, willing and able to perform his part of the agreements, but the defendants have refused to convey.

The answer and affirmative defense filed by the defendants raise the issues of the plaintiff's failure to tender the purchase price and the subsequent act of the defendants at the end of August, 1973, purporting to hold the offer to purchase and acceptance void because of the plaintiff's inability to secure the required financing.

Thus, we conclude there are issues raised by the pleadings in this case relating to the failure to have the closing of the transaction by the date specified in the offer to purchase, the subsequent oral extension of such closing date by the parties to August, 1973, and the subsequent action by the defendants in holding the offer to purchase and acceptance void.

However, as is required by the methodology to be used in deciding summary judgment motions, we next must examine the defendants' affidavits and other proof submitted to determine whether a *prima facie* defense to the specific performance action has been made out. The affidavit contains most of the same factual allegations made by the defendants in their answer and affirmative defense. In their affidavit the defendants assert, among other things, that the time for closing this real estate transaction was never altered in writing but was extended orally by agreement to August, 1973. The defendants state that the plaintiff was unable by June of 1973 to raise the purchase money and was also unable at the extended closing date of August, 1973 to raise the purchase money because, as he represented to them, he was in the midst of a divorce and had to make a large cash settlement. According to the defendants, after the plaintiff was unable to purchase the property in 1973, they ". . . declared the buyer in default, declaring all moneys paid forfeited . . . pursuant to the contract. . ."

The defendants' affidavit also reveals the course of negotiations between the parties after the failure to close

in 1973. According to the defendants, in June of 1974 they approached the plaintiff about buying the property and at that time both they and the plaintiff considered the offer to purchase and acceptance of May 28, 1972 to be of no effect. It was then the plaintiff orally offered to purchase the property for $32,000 (less $1,000)—its then fair market value.

An analysis of the defendants' affidavit at this stage indicates that they have made out a *prima facie* defense to the action for specific performance. They have asserted that the written offer to purchase agreement, which is the subject of this specific performance action, was declared void and of no effect in 1973. Although no documentary proof has been submitted to substantiate this claim, the defendants do detail the parties' actions in 1974 concerning the property. Clearly, these actions of negotiating and the plaintiff agreeing to buy the property for $31,000 are inconsistent with the continued existence and validity of the written offer to purchase and acceptance.

The defendants' supplemental affidavits filed in support of the motion for summary judgment also detail acts and conduct of the parties which would be inconsistent with the continued existence of the offer to purchase and acceptance of May 28, 1972.

The summary judgment methodology now requires an examination of the plaintiff's affidavit and proof in opposition to the defendants' summary judgment motion and affidavits. In his affidavit, the plaintiff asserts that the time for the closing of the transaction contemplated in the offer to purchase of May, 1972 was repeatedly extended after June, 1973 at the request of the defendant, Edward Oberst, and specifically that the time for the closing of such agreement was extended until December of 1974. Additionally, the plaintiff asserts that the money necessary to complete the transaction has been

available to him since June of 1973. He has attached to the affidavit a copy of a bank's approval of his mortgage loan for the purchase of the property dated September, 1973. He asserts that at all times since the execution of the offer to purchase, his financial condition has been sound and he has had available to him the funds necessary to complete the transaction. According to the affidavit, the transaction has not been completed because of the repeated persistent and obstinate refusal of the defendants to execute the deed which the plaintiff tendered to the defendants for execution in September of 1973. He claims the reasons the defendants have refused to execute the deed are unrelated to the plaintiff or his financial condition and include such things as the fact that the defendants changed their minds and did not wish to sell the property until their retirement, and also that the defendants had been offered more money for the property by other persons.

Finally, the affidavit of the plaintiff asserts that he has partially performed on the contract because he has constructed a driveway and fence on the real estate with the express consent and approval of the defendants.

An analysis of this affidavit reveals the existence of a disputed material fact, to-wit, whether the written offer to purchase and acceptance of May, 1972 was ever declared void, rescinded or cancelled by the defendants. The defendants allege that it was because the closing was not held by August of 1973. The plaintiff alleges the time for closing such agreement was extended until December of 1974. Just as the defendants' affidavits revealed the existence of acts and conduct of the parties which would have been inconsistent with the continued existence of the May, 1972 offer to purchase and acceptance, so, too, the affidavit of the plaintiff reveals acts and conduct by the parties which were consistent with the continued existence of such agreement, i.e., the con-

struction of the driveway and fence on the property, the application for and approval of a mortgage loan for the plaintiff in September of 1973, and the tender to the defendants for execution in September, 1973 of a warranty deed transferring the property.

The critical question involved in this case and the question to which there is a dispute as to the facts, is whether the written offer to purchase and acceptance was ever rescinded or terminated for the plaintiff-buyer's failure to proceed to closing. Whether the contract was rescinded poses a question of fact to be determined from the intent of the parties as manifested either in their words, acts or conduct. *Hausmann v. Wittemann,* 26 Wis.2d 482, 132 N.W.2d 537 (1965). In the instant case, the parties' words, acts or conduct, as evidenced in the affidavits, are in dispute and subject to differing inferences and conclusions. Therefore, the plaintiff is entitled to a trial because summary judgment is not a trial on affidavits. *Kavon Enterprises v. American Universal Ins. Co., supra.*

The express concern of the trial court with respect to the validity, under the statute of frauds, of any oral agreement to extend the time for closing the contract is misplaced at least insofar as the facts alleged in the pleadings and affidavits filed in this case reveal. This court has previously stated:

". . . Generally speaking, if a plaintiff buyer, acting under an oral contract and with the assent of the seller, either makes valuable improvements on the land or takes possession of the land, he is entitled to specific performance of the contract. . ." *Kelly v. Sullivan,* 252 Wis. 52, 30 N.W.2d 209 (1947), at p. 59.

See also *In re Estate of Schaefer,* 72 Wis.2d 600, 609, 241 N.W.2d 607 (1976).

The plaintiff's affidavit alleges partial performance under the offer to purchase agreement between the parties with respect to the paving of a driveway and installation of a fence at a cost of $2,811.36. It is also alleged in the affidavit of the plaintiff that such improvements were done with the express approval of the defendants, such approval being necessary under the case law in order to constitute a partial performance under the statute of frauds. *See Kelly v. Sullivan, supra,* at p. 59.

As the trial court correctly noted, sec. 706.04, Stats., permits some contracts rendered invalid by the statute of frauds, sec. 706.02, Stats., to be enforceable in whole or in part in the interest of equity where there has been part performance and the end result will be unjust enrichment of one party and/or substantial detriment to the other based on the reliance on the invalid agreement. We think there is a disputed question of fact in this case as to whether the actions of the parties with respect to the paving of the driveway and installation of the fence were sufficient to constitute partial performance and to satisfy any of the subsections of sec. 706.04, Stats., thereby permitting enforcement of the alleged oral agreement to extend the time for closing the transaction.

Similarly, the failure of the plaintiff to allege that he specifically tendered the purchase price at any time to the defendants, which failure greatly concerned the trial court, is not fatal to the plaintiff's claim under the circumstances of this case. The complaint alleges that the plaintiff was ready, willing and able to perform his part of the contract at all material times, and is still so ready, willing and able. This, it would seem, would be equivalent to an allegation of tender, *cf. Ochiltree v. Kaiser,* 20 Wis. 2d 191, 198, 121 N.W.2d 890 (1963). Moreover, tender of performance by the plaintiff has been excused at least since the sale by the defendants of the property to the

third party because this action by the defendants was a repudiation of the purchase agreement. *See Clear View Estates, Inc. v. Veitch,* 67 Wis.2d 372, 381, 227 N.W.2d 84 (1975) ; *Kubnick v. Bohne,* 56 Wis.2d 527, 202 N.W.2d 400 (1972) ; and *Kreutzer v. Lynch,* 122 Wis. 474, 100 N.W. 887 (1904). It would have been futile and therefore unnecessary for the plaintiff to tender performance at that time.

Finally, the issue raised in the briefs on this appeal as to whether time was of the essence of the contract is not controlling under the circumstances as they have been alleged. The offer to purchase was specifically conditioned upon the closing of the transaction being held by June 30, 1973. The contract moreover specifically made time of the essence with respect to occupancy of the premises which was to occur 30 days after closing, and the contract specifically provided the place and date for such closing to occur. In *Kubnick v. Bohne, supra,* this court at p. 535, quoting from earlier cases stated:

" 'Time will not be regarded as of the essence of the contract merely because a definite time for performance is stated therein, without any further provision as to the effect of nonperformance at the time stated.' . . . 'The importance of time of performance depends upon the terms in the contract and the circumstances appearing from the acts of the parties.' . . . 'The general rule is that time is not of the essence of a contract of sale of realty unless expressly made so or impliedly so by surrounding circumstances. However, time may be made of the essence after breach of the contract by reasonable notice to the person in default to perform.' "

In the instant case, even if time was of the essence of the original contract, such condition for performance was waived by the conceded agreement of the parties to extend the closing until at least August, 1973. According to the plaintiff, it was further waived and extended until

December of 1974. The defendants' apparent willingness to negotiate for the sale of the property with the plaintiff as late as June, 1974, negates any contention that time was of the essence as far as they were concerned. Perhaps additional facts will be brought out in the trial of this matter to indicate that the parties did intend time to be of the essence with respect to the transfer of this real estate, but as the record now stands on this motion for summary judgment, this determination cannot be made.

Because the affidavits submitted in this case demonstrate that there are substantial issues in dispute, the defendants were not entitled to summary judgment. *See Frohna v. Continental Ins. Co.,* 62 Wis.2d 650, 215 N.W.2d 1 (1974).

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.