ESTREEN, Plaintiff-Respondent, v. BLUHM, and another, Defendants-Respondents.

*No. 75–167. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 473.)

144

146

148

For the appellants the cause was submitted on the briefs of *Larry W. Rader* of Wausau.

For the respondent the cause was submitted on the brief of *Douglas J. Klingberg* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.* of Wausau.

HANLEY, J. Following issues are presented on appeal:

1. Have the appellants waived their right to appeal?

2. Under the compromise agreement, who was obligated to pay the real estate taxes for 1972?

3. Upon what amounts and to whom is interest due?

4. Did the trial court abuse its discretion by not awarding costs to the Bluhms?

*Waiver of Appeal*

The respondent's contention that this appeal should be dismissed is based upon the general rule that if a benefit received is dependent upon, or was granted as a condition of, the order or judgment attacked, the party receiving that benefit ought not be permitted to carry on his challenge. *Wyandotte Chemicals Corp. v. Royal Electric Manufacturing Co., Inc.,* 66 Wis.2d 577, 592, 225 N.W.2d 648 (1975) ; *Uebelacher v. Plankinton Pack-*

*ing Co.*, 251 Wis. 87, 28 N.W.2d 311 (1947). Since the Bluhms accepted the $40,937.59 paid to the court by Estreen according to the March 21, 1975 judgment, Estreen argues, they have waived their right to appeal.

We think the rule of waiver does not apply in this case. A party which accepts the benefits of a judgment does not waive the right to take an appeal which does not involve a reversal of that part of the judgment under which the benefit was received. Therefore, the acceptance of payment under a judgment for less than the amount claimed does not prevent an appeal to modify the judgment in order to increase the recovery to the full amount claimed. *Stevens Construction Corp. v. Draper Hall, Inc.*, 73 Wis.2d 104, 110–11, 242 N.W.2d 893 (1976) ; *Wyandotte Chemicals Corp. v. Royal Electric Manufacturing Co., supra* at 592–93.

In the instant case, the Bluhms' appeal seeks to increase the amount they are entitled to under the judgment. It is their claim that the trial court wrongfully concluded that they should pay the real estate taxes for 1972. They have not, by their appeal, put in jeopardy their right to the money which they accepted, and, therefore, the acceptance of that benefit does not place the appellants in a posture which is contrary to that taken on appeal.

### 1972 Real Estate Taxes

The trial court interpreted the compromise agreement to require the payment of the 1972 real estate taxes by the Bluhms. We do not agree.

Under the first land contract, Estreen, as vendee, was obligated to pay all real estate taxes levied against the first parcel after November 5, 1967. Under the second land contract, he was obligated to pay all real estate taxes levied against the second parcel after January 1, 1968. Both of these land contracts contained the provi-

sion that in the event the vendee's obligations were fully performed, the Bluhms, as vendors, would cause to be executed and delivered to the vendee:

". . . a good and sufficient Warranty Deed, in fee simple, of the premises above described, free and clear of all legal liens and incumbrances except the taxes and assessments herein agreed to be paid by the [vendee], and except any liens or encumbrances created by the act or default of the [vendee]. . . ."

Under the compromise agreement the Bluhms agreed that, upon the payment of $86,750 by Estreen, they would "convey the premises above described in fulfillment of the above described Land Contracts by good and sufficient warranty deed free and clear of all liens and encumbrances."

It is not disputed that the compromise agreement was a modification of the existing land contracts. While the effect of the modification may be the creation of a new contract, that contract consists of not only the new terms agreed upon, but also as many of the terms of the original contract which were not abrogated by the modification. 17A C.J.S. *Contracts* §379 (1963). Thus, a modified agreement should be construed in connection with the original contract in order to ascertain the intent of the parties.

Whether the Bluhms were responsible for the 1972 real estate taxes depends upon whether the compromise agreement modified that part of the land contracts which obligated Estreen to pay all real estate taxes. The provision of the compromise agreement setting forth the Bluhms' obligation to convey states that they shall convey the premises "in fulfillment of the above described Land Contracts" by warranty deed "free and clear of all liens and encumbrances." Conveyance in fulfillment of the land contracts is, according to the terms of those

contracts, by warranty deed free of all encumbrances *except* any taxes and assessments agreed to be paid by the vendee and any encumbrances created by the vendee. Thus, conveyance in fulfillment of the land contracts is not conveyance free and clear of all encumbrances. Depending upon which phrase, "in fulfillment of the land contracts" or "free and clear of all liens and encumbrances," emphasis is placed, the compromise agreement is susceptible of two different meanings in regard to whether Estreen's obligation under the land contracts to pay all real estate taxes is modified. As a result, the compromise agreement is ambiguous in this respect. *Mutual Federal Savings & Loan Ass'n v. Wisconsin Wire Works,* 58 Wis.2d 99, 104, 205 N.W.2d 762 (1973).

The construction of an ambiguous contract is a question of fact. *Patti v. Western Machine Co.,* 72 Wis.2d 348, 353, 241 N.W.2d 158 (1976). Therefore, the trial court's determination that the Bluhms were obligated to pay the 1972 real estate taxes, which necessarily implies the finding of a modification of Estreen's duty to pay taxes under the land contracts, is a finding of fact which this court must uphold unless it is contrary to the great weight and clear preponderance of the evidence. *Patti v. Western Machine Co., supra* at 353–54.

We believe the trial court's finding that the Bluhms had agreed to pay the 1972 real estate taxes is against the great weight and clear preponderance of the evidence. This finding by the trial court rests solely upon the phrase "free and clear of all liens and encumbrances," which is part of the ambiguous language of the contract. On the other hand, a finding that Estreen's obligation to pay real estate taxes was not modified is supported by a view of the compromise agreement in light of the circumstances surrounding this transaction and the rules of construction.

The compromise agreement was executed for the purpose of settling the dispute between the parties as to the amount which remained to be paid by Estreen. This dispute involved the amounts the Bluhms had already received from Estreen, the rents the Bluhms had collected for Estreen under the second contract, and the amounts the Bluhms had spent for maintenance of and taxes upon the second parcel under the second land contract. It is undisputed that the Bluhms collected no rents for Estreen after 1971. Furthermore, only the second land contract provided that rents be collected by the Bluhms, and the record shows no rents were collected by the Bluhms on the first parcel. Under these circumstances it would be more reasonable to compromise simply upon the outstanding balance owed by the vendee than to make a compromise which additionally relieved the vendee of real estate taxes upon both parcels for one particular year.

The respondent's position is also weakened by the fact he only claims the 1972 taxes should be paid by the Bluhms. The compromise was executed on July 27, 1973, and at that time the two parcels were encumbered, not only by the delinquent 1972 real estate taxes, but also by accrued 1973 real estate taxes and a judgment against Estreen in favor of Davel & Kohlbeck Engineering Co. Although the respondent bases his contention that the Bluhms were obligated to pay the 1972 real estate taxes upon the argument that under the compromise agreement the Bluhms were required to convey the property free and clear of all liens and encumbrances, he does not argue that they must pay the accrued 1973 taxes and also satisfy the outstanding judgment. By arguing that the Bluhms must pay the 1972 taxes, but they need not extinguish these other encumbrances, Estreen has adopted inconsistent positions.

The trial court in its original decision and judgment, entered January 6, 1975, did conclude that the Bluhms

were responsible for 1973 and accrued 1974 real estate taxes, but these liabilities were excluded in the amended decision. The trial court stated: "Since the plaintiff was collecting rents and receiving the benefits from the property in question, the court finds that it is his responsibility to pay the 1973 and 1974 real estate taxes." The record shows, however, that the plaintiff, Estreen, was collecting rents and receiving benefits from the property during the entire year of 1972 also.

The rule that an ambiguous contract should be construed against the drafter (*Moran v. Shern,* 60 Wis.2d 39, 49, 208 N.W.2d 348 (1973)) also operates in favor of the Bluhms. Estreen, himself an attorney, drafted the initial compromise agreement. The savings & loan suggested a more formal legal document be drafted, and, thus, the Bluhms went with Estreen to the law offices of his attorney, who was also at that time representing the savings & loan in a possible foreclosure action against the Bluhms upon their mortgage on the two parcels. The compromise agreement was drafted by the attorney, who, Estreen testified, was at the time representing him and the savings & loan. These circumstances justify the application of the rule that an ambiguous contract should be construed in favor of the party who is not responsible for its drafting.

Under the land contracts, Estreen had been responsible for the payment of all real estate taxes since 1968, and the singling out of the 1972 taxes for payment by the Bluhms must rest upon some specific provision of the compromise. No such provision exists. In view of this record, the trial court's finding that, under the agreement, the Bluhms were to pay the 1972 real estate taxes is against the great weight and clear preponderance of the evidence. The Bluhms' obligation to convey as provided in the land contracts was not modified.

*Interest Due*

The above conclusion establishes the rights and duties of the parties under the agreement such that its specific performance may be directed. Issues remain, however, as to the allowance of interest.

The allowance of interest, in cases in equity, is a matter within the discretion of the court. *Haueter v. Budlow,* 256 Wis. 561, 572, 42 N.W.2d 261 (1950). The only interest allowed by the trial court was to the plaintiff, Estreen, upon his satisfaction of the Bluhm mortgage. This result clearly constitutes an abuse of discretion, since it fails to recognize the established principles applied in actions between vendors and vendees under land contracts.

Interest is required for the purpose of compensating one to whom payment is due for the lack of the use of the money. *Will of Kalicicki,* 33 Wis.2d 277, 286, 147 N.W.2d 343 (1967); *Giffen v. Tigerton Lumber Co.,* 26 Wis.2d 327, 334, 132 N.W.2d 572 (1965).

Although the allowance of interest depends upon the various equities in each case, the general principle followed in cases involving the enforcement of executory contracts for the purchase and sale of real property is that it is inequitable to permit either party, vendor or vendee, to enjoy both the beneficial use of the property and the use of the purchase money without being held accountable in some manner to the other. *See Kubnick v. Bohne,* 56 Wis.2d 527, 537–38, 202 N.W.2d 400 (1972); Annot., *Rights as Between Vendor and Vendee Under Land Contract in Respect of Interest,* 25 A.L.R.2d 951, 953 (1952).

Here the record shows that Estreen was in possession of the two parcels of land and was accepting the benefits

therefrom at all times material. From the time of the execution of the land contracts in 1967, Estreen was owner in equity of the properties. *Kallenbach v. Lake Publications, Inc.*, 30 Wis.2d 647, 651, 142 N.W.2d 212 (1966).

Except for those rents from the second parcel received by the Bluhms from 1967 through 1971 for his benefit, Estreen directly received all the rents from these properties. Since Estreen has been in full possession of the involved premises, equity demands that the Bluhms receive interest upon the unpaid purchase price. *Kubnick v. Bohne, supra; see also State v. Conway*, 40 Wis.2d 429, 438, 162 N.W.2d 71 (1968).

The record in this case cannot support a conclusion that Estreen made a satisfactory tender of the purchase price which would relieve him of the duty to pay interest. Estreen testified that at the closing conference on October 23, 1973, the purchase price was available and ready to be paid to the Bluhms upon completion of the transaction, but that Mr. Bluhm refused to accept it. Estreen also testified, however, that the money had never been paid to the Bluhms. It is apparent that the availability of the money and Estreen's readiness to consummate this transaction at the closing conference were restricted in the sense that the payment could only be accepted by the Bluhms as a payment in full. Estreen only showed that he was willing and able to perform the contract according to his own terms. There is further no showing that the money, which Estreen claims he tendered, was placed beyond his own use. Such an offer at the closing conference is not sufficient to stop the running of interest. *Giffen v. Tigerton Lumber Co., supra* at 334.

It is argued by the respondent, Estreen, that since the Bluhms were the "wrongdoers" in this transaction, they are not entitled to interest and he is. In the first place, except in relation to a wrongful refusal to accept a sat-

isfactory tender of payment, it is a misconception that fault is a critical factor in determining to whom and upon what amounts interest should be allowed. In *Kubnick v. Bohne, supra,* the wrongful repudiation of the contract by the vendor under an option agreement did not affect the vendor's right to receive interest on the purchase price, where the vendee had possession of the premises. Even if fault were a factor, it was concluded above that the Bluhms were correct in their refusal to pay the 1972 real estate taxes. Moreover, it is difficult to understand how it may be claimed the Bluhms absolutely refused to perform the agreement when they had executed warranty deeds to the properties and placed them in the possession of Estreen's agent, the savings & loan, almost three months prior to the closing conference.

Having concluded that the Bluhms are entitled to interest upon the unpaid purchase price it is necessary to determine what rate of interest applies, from what date interest should accrue, and what is the effect of Estreen's payment of the Bluhms' mortgage and the Bluhms' acceptance of the money awarded by the trial court's judgment.

We hold that the interest should accrue at the legal rate of 5 percent per year as provided in sec. 138.04, Stats. Although the original land contracts set a rate of 5¾ percent, no rate is set forth in the compromise agreement. The compromise agreement established a set amount to be paid by Estreen in order that he satisfy his obligation. The agreement as modified was completely executory and thus abrogated the interest rate under the original land contracts. *See Kilgust Heating Division of Wolff, Kubly, Hirsig, Inc. v. Kemp,* 70 Wis.2d 544, 550, 235 N.W.2d 292 (1975).

The general rule as to the time at which interest begins to run on a liquidated claim is that the creditor is

entitled to interest from the time payment was due by the terms of the contract and, if no such time is specified, then from the time a demand was made and, if no demand was made prior to the time of commencement of action, then from that time. *In re Oconto Co. State Bank,* 241 Wis. 369, 6 N.W.2d 353, 7 N.W.2d 602 (1942). The Bluhms claim interest from July 27, 1973, the date on which they executed the warranty deeds and gave them to the savings & loan. However, this is not the date on which payment became due or when a demand was made. The Bluhms readily agreed that the entire transaction would be completed on a later date after the abstract was extended and the savings & loan obtained a title opinion. Thus, the date of the closing conference, October 23, 1973, was the first date upon which the payment of the compromised purchase price could have become due. On that date, the Bluhms had already performed their obligations under the agreement, and although they refused to complete the transaction, their refusal was of the agreement on Estreen's terms. This refusal should be construed as a demand that the agreement be consummated upon their interpretation of the agreement; it thus constituted a demand for the amount to which they were entitled. Interest should begin to run from October 23, 1973.

As stated above, at the closing conference Estreen did not sufficiently tender the $86,750 he had agreed to pay. Thus, from October 23, 1973, interest began to accrue. On December 18, 1973, Estreen paid off and received assignment of the Bluhms' mortgage on the properties in the amount of $39,187.82. This payment should, in equity, be considered a partial payment to the Bluhms of the unpaid purchase price, thereby reducing Estreen's outstanding debt. Such a partial payment is first applied to discharge the interest then due, and any surplus goes to discharge principal; interest thereafter is computed on the remaining balance. 47 C.J.S. *Interest* §66a (1946).

The debtor in this case Estreen, is not additionally entitled to interest upon this partial payment, as the trial court allowed. 47 C.J.S. *Interest* §66b (1946). To permit such interest is to give the debtor a double benefit, for the reduction of his debt also relieves him of paying interest to that extent. Thus, after the date of the payment of the mortgage by Estreen, his debt is the unpaid balance plus accruing interest. On March 28, 1975 the Bluhms accepted a check from the clerk of courts in the amount of $40,937.59 representing Estreen's payment of the judgment of the trial court. This acceptance, treated as another partial payment, is further applied to reduce Estreens' debt, first to discharge interest due and next to discharge principal. The record shows no other payments made, and, therefore, interest continues to run upon the unpaid balance.

*Costs*

The appellants, the Bluhms, contend the trial court abused its discretion by not granting them costs under sec. 271.035, Stats. (1973). As a basis for this claim, the Bluhms assert that they delivered merchantable title under the agreement. Whether the Bluhms did tender such title was the primary issue in this case. The fact that they are successful in their claim does not entitle them to costs under the statute. In a case such as this, costs are in the discretion of the court. Appellants have failed to show any abuse of discretion.

We conclude that the part of the judgment fixing the amount due the appellants from the respondent, at $40,937.15, must be reversed.

*By the Court.*—That part of the judgment fixing the balance owing appellants by the respondent at $40,937.15 is reversed and the cause is remanded with the direction that the trial court enter judgment not inconsistent with this opinion.