# In the
# United States Court of Appeals
## For the Seventh Circuit

—————

No. 02-4301

HASBRO, INC.,

*Plaintiff-Appellant,*

v.

CATALYST USA, INC.,

*Defendant-Appellee.*

—————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
Nos. 02-C-0108, 02-C-0119—**Rudolph T. Randa**, *Chief Judge.*

—————

ARGUED MAY 27, 2003—DECIDED MAY 10, 2004

—————

Before ROVNER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Although companies often choose arbitration with the hope of avoiding the (presumed) greater time and expense of litigating in court, that was not the fate of the parties in this case. Hasbro, Inc. and Catalyst USA, Inc. waited more than two years for a final award from an arbitration panel that was adjudicating a dispute between them about a software license. After the award was finally issued, the losing party, Catalyst, asked the district court to vacate the arbitral award. The court agreed that

this was appropriate on the ground that the arbitrators had exceeded their authority by waiting too long to issue their decision. While we appreciate the frustration caused by the delay, a closer look at the proceedings shows that no one objected at the crucial time to the panel's conduct of the proceedings. Whatever errors with respect to deadlines may have been committed were either waived or harmless. We therefore reverse and remand for entry of an order enforcing the award.

# I

In 1993, Hasbro and Catalyst entered into a software licensing contract, in which they agreed to arbitrate any disputes that arose that could not be resolved amicably. Any such dispute was to be submitted to arbitration pursuant to the Federal Arbitration Act (FAA) and the rules of the American Arbitration Association (AAA).

Six years later, dissatisfied with the performance of Catalyst's software, Hasbro filed a demand for arbitration on October 8, 1999. A hearing was conducted in Milwaukee between October 2000 and March 2001 before a panel of arbitrators from the Commercial Arbitration Tribunal of the AAA. On March 9, 2001, the panel issued an interim scheduling order, providing for briefing to conclude on June 8, 2001, and for oral argument to be held on June 28, 2001. After oral argument, the panel directed additional briefing to be completed by July 10, 2001. In addition, the parties agreed at oral argument to amend their arbitration agreement to permit the panel to award attorneys' fees to the prevailing party. No formal declaration that the hearing was closed was made at this time. Hasbro now claims that it believed that the hearing had not been closed, because evidence about attorneys' fees had not been requested and had not otherwise been deemed necessary.

The parties did not hear again from the AAA or the panel until October 2, 2001, when the AAA sent a bill to the parties seeking compensation for the arbitrators' "post-hearing time" from July to September 2001. In response, Catalyst requested an explanation of the bill. On October 10, 2001, the AAA sent the parties an itemization of charges—a communication that raised red flags for Catalyst. Catalyst found questionable the hours and increased rate charged by the panel chair, Alan Wernick. The itemization of the charges also brought to light other key information. Among the many entries were ones that stated "review and revise damage calculations to provide interest" and "extended conferences with panel regarding damage calculations and award." Because only Hasbro had requested damages, Hasbro alleges that these references to damage calculations should have signaled to Catalyst that Hasbro was the prevailing party.

On October 26, 2001, Catalyst wrote to the AAA challenging the propriety of Wernick's charges. In that letter, it also asserted for the first time that under Rule 37 of the AAA rules, the hearing had been closed on July 10, 2001, "as of the final date set by the arbitrator for the receipt of briefs," and that under Rule 43, the arbitrator had until August 11, 2001, "30 days from the date of closing the hearing," to make the award. The panel's failure to issue the award by August 11, 2001, Catalyst charged, raised "serious questions about the validity of the entire process."

On November 8, 2001, Catalyst received additional information concerning the Wernick bills. Again it wrote to the AAA requesting further information that would help it to analyze the propriety of the charges. It also, at that point, inquired specifically about the status of the overdue award. Not receiving word from the AAA, on November 13, 2001, Catalyst formally objected to the untimeliness of the award. Perhaps prompted by this inquiry, or perhaps for their own reasons, the arbitrators declared the hearing

closed on December 5, 2001, and issued their award on January 2, 2002. The panel awarded Hasbro $799,839.93, plus interest; denied Catalyst's counterclaims; and divided arbitration fees, expenses, and compensation equally between the two parties, requiring Hasbro to pay the remaining $2,083.63 and Catalyst the remaining $22,083.63 outstanding. It declined to award attorneys' fees to either side.

Catalyst moved in district court to vacate the arbitration award on the ground that the arbitrators exceeded their power by issuing an untimely award. The district court agreed, and this appeal followed.

## II

Generally, a court will set aside an arbitration award only in "very unusual circumstances," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Judicial review of arbitration awards is "tightly limited," *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994), and confirmation is "usually routine or summary," *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002). "With few exceptions, as long as the arbitrator does not exceed [her] delegated authority, her award will be enforced." *Butler Mfg. Co. v. United Steelworkers of Am.*, 336 F.3d 629, 632 (7th Cir. 2003). This is so even if the arbitrator's award contains a serious error of law or fact. *Major League Baseball Players Assoc. v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam); *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993). We review the district court's decision to vacate the arbitration award *de novo*, *Indep. Employees' Union of Hillshire Farm Co., Inc. v. Hillshire Farm Co., Inc.*, 826 F.2d 530, 532 (7th Cir. 1987), accepting findings of fact that are not clearly erroneous, *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001).

The FAA makes arbitration agreements enforceable "to the same extent as other contracts, so courts must 'enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617, 620 (7th Cir. 2002) (quoting *Volt Info. Scis, Inc. v. Stanford Univ.*, 489 U.S. 468, 478 (1989)). Under Wisconsin law, which applies to this diversity action, see *First Bank Southeast, N.A. v. Predco, Inc.*, 951 F.2d 842, 846 (7th Cir. 1992), untimely performance of a contractual obligation does not result in the harsh penalty of forfeiture or rescission, unless the parties agree that "time is [ ] of the essence." *Appleton State Bank v. Lee*, 148 N.W.2d 1, 3 (Wis. 1967); see also *Employers Ins. of Wausau v. Jackson*, 527 N.W.2d 681, 688-89 (Wis. 1995) (applying "time is of the essence" standard to arbitration agreements). Thus, even assuming that the panel's performance was untimely, whether the arbitration agreement was thereby rendered unenforceable depends on whether the parties agreed that time would be of the essence.

Whether this was indeed the parties' agreement is generally a question of fact that, if there was some sign of a material dispute, we would need to remand to the district court as fact-finder. See *Employers Ins. of Wausau*, 527 N.W.2d at 688. In this case, however, the evidence is entirely documentary and the parties have thoroughly briefed the issue. A remand, in our opinion, is therefore unnecessary and would only prolong this already-too-long proceeding.

Under Wisconsin law, time is generally not of the essence, "unless it is expressly made so by the terms of the contract, or by the conduct of the parties." *Stork v. Felper*, 270 N.W.2d 586, 589 (Wis. App. 1978). In this case, nowhere either in the arbitration agreement or in the AAA rules does it expressly say that time was of the essence. Wisconsin law further indicates that the fact that the AAA rules

specify a 30-day deadline is not enough to support the inference that time is of the essence. *Zuelke v. Gergo*, 45 N.W.2d 690, 693 (Wis. 1951) ("The fact that a contract sets a date for the closing of a transaction does not of itself make time of the essence of the contract.").

> The absorption of equitable principles by the law has modified the severity of the rule giving undue importance to mere dates . . . . [U]nless the nature of the contract is such as to make performance on an exact day vital or the contract in terms so provides, the failure by a party to perform on the particular day does not discharge the other party.

*Id.*

Nor does the conduct of the parties in this case support a finding that time was of the essence. *Stork*, 270 N.W.2d at 589. Although Catalyst asserts that the hearing should have been declared closed on July 10, 2001, and an award should have been issued by August 11, 2001, Catalyst itself waited until October 26, 2001, before raising the issue of untimely performance, and until November 13, 2001, before formally objecting to the arbitrators' delay.

Indeed, all indications suggest that Catalyst, the party now complaining of untimely performance, benefitted from the delay, given the fact that it was able to hold off payment to Hasbro for several months at no cost (apart from the questionable arbitrators' fees, which we discuss in a moment). A conclusion that time was not of the essence under these circumstances comports with Wisconsin's additional consideration of equity in construing the parties' agreement, by allowing Hasbro to avoid the harsh penalty of forfeiture when the delay caused no prejudice to Catalyst.

> There is also a rule which is entitled to serious consideration that when the terms of a contract are, or, by any act of parties under the contract, become indefinite, uncertain and susceptible of two constructions, and by

> giving them one construction one of the parties would be subject to forfeiture, and by giving them the other no such forfeiture would be incurred and no injustice would be done to the other party, the contract should be construed as not creating a forfeiture.

*Zuelke*, 45 N.W.2d at 693 (citing *Jacobs v. Spalding*, 36 N.W. 608, 614 (Wis. 1888)).

For these reasons, we find that time was not of the essence under this arbitration agreement. Therefore, the arbitrators did not exceed their authority by issuing an untimely award to the extent that the harsh penalty of forfeiture or rescission was warranted. In a final effort to avoid this outcome, Catalyst has also suggested before this court that an alternate reason to find that the panel exceeded the scope of its powers is that its delay was for the impermissible reason of awarding the panel chair excessive compensation. Because Catalyst did not properly raise this argument before the district court, however, we decline to reach it here. (If this was indeed a problem, it is something the AAA itself can and should investigate and address.)

This is not to say, obviously, that arbitrators may indefinitely delay issuance of an award, in open violation of the AAA rules, without the parties' consent. Under Wisconsin law, "time may be made of the essence after breach of the contract by reasonable notice to the person in default to perform." *Ochiltree v. Kaiser*, 121 N.W.2d 890, 893 (Wis. 1963). But the prejudiced party must make its objection known, which Catalyst failed to do here. This entire problem stemmed from the panel's original failure to declare the hearing closed in accordance with Rule 37. Such a declaration would have triggered the 30-day deadline under Rule 43. From the time Catalyst gave notice of its position that the panel had breached Rule 37, however, there was no further delay or failure to perform to which Catalyst can point. *Cf. id.* (finding against a party in default

that did nothing, even after notified of untimely performance and specifically warned that failure to perform within 30 days would terminate the contract). Upon receiving notice from Catalyst, the panel promptly invited Hasbro to respond. Soon after, it declared the hearing closed and issued an award within 30 days thereafter.

Notwithstanding our enforcement of the arbitral award, we do not condone the panel's substandard performance. The AAA (and judicial tribunals) have good reasons for rules that clarify when a proceeding is concluded. These rules allow all parties to know whether there is still time remaining to raise points with the original tribunal, whether the time has come to appeal, and how much time exists for all such steps. Just as Federal Rule of Civil Procedure 58, which requires a specific document memorializing a final judgment, avoids countless problems with the appellate process that arise when a separate final judgment is missing, the AAA's rules also structure the process so that parties will know at all times where they stand.

## III

We therefore VACATE the judgment of the district court and REMAND for enforcement of the arbitral award.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*